THE NATIONAL BANK OF WATERVLIET, Appellant, *v.* LEWIS MARTIN, Respondent, Impleaded with MINNIE E. MATTON, Defendant.

Third Department, November 15, 1922.

Bills and notes — action by indorsee to recover face of note — contemporaneous agreement provided for part payment of principal and renewal at option of maker — agreement assigned to indorsee — indorsee chargeable with knowledge of agreement and agreement binding upon it — no breach of agreement before note discounted — tender of payment of part of principal and renewal note to payee not defense — indorsee holder in due course and entitled to recover face of note.

An agreement made contemporaneously with a promissory note giving the maker an option to renew the note on the due date on the payment of a part of the principal or to pay it in full, must be read in connection with the note, and it becomes binding upon any succeeding holder who comes into ownership with notice of the existence and terms of such contemporaneous agreement.

The plaintiff, which discounted a note for $7,500 given by the defendant to a third person in part payment for a boat, is a holder in due course and entitled to recover the face of the note, although it appears that an agreement executed contemporaneously with the note gave the defendant option to pay $250 of the principal on the due date of the note and to renew the note for a like period until paid in full, with a further option to pay the note in full on any due date; that said agreement was assigned to the plaintiff as further security for the payment of the note; and that when the note became due the defendant tendered to the payee $250 of the principal together with the interest and a renewal note for the balance, where it appears also that the note was negotiated before maturity and at the time of its negotiation the payee had not breached the condition in the contemporaneous agreement.

HINMAN, J., and H. T. KELLOGG, Acting P. J., dissent, with opinion.

APPEAL by the plaintiff, The National Bank of Watervliet, from a judgment of the Supreme Court in its favor, entered in the office of the clerk of the county of Albany on the 1st day of May, 1922, upon the decision of the court rendered after a trial at the Albany Trial Term, a jury having been waived.

*Eugene McLean* [*John T. Norton* of counsel], for the appellant.

*John J. Mackrell,* for the respondent.

HASBROUCK, J.:

This is an appeal from a judgment for the sum of $250, interest and costs, in favor of the plaintiff against the defendant Lewis Martin.

The action was brought on a promissory note made February 10, 1921, by the defendant Lewis Martin to the order of one P. Jesse Matton for $7,500, payable in three months at the bank of the plaintiff. The note thereafter was indorsed by the said Matton and Minnie Matton, his wife, and delivered on the 17th day of February, 1921, to the plaintiff who became the owner thereof.

When the note became due it was presented for payment which was refused and duly protested and notice thereof duly given to the defendants. The defendant Martin alleges as a defense to the action upon the note that the note was given in the performance of a contract made between the defendant Martin and one P. Jesse Matton by the terms of which Matton agreed to build a boat of certain dimensions and according to certain specifications and agreed that the same would be completed and ready for delivery on the 15th day of May, 1921. The defendant Martin agreed to pay for such boat the sum of $10,500; $3,000 down and a $7,500 note for three months without interest, and that Martin at the end of three months should pay to Matton the sum of $250 in cash and to renew the note for three months for $7,250 with interest, and upon the expiration of the second note to pay $250 and interest, and the said Matton further agreed that Martin be allowed to renew said note every three months until the principal and interest were paid, and be allowed to pay the whole or any part of said note on any renewal day.

Matton took the $7,500 note to the plaintiff and said that he desired to discount it in order to finance the performance of the said contract and that he would assign the contract to the plaintiff as collateral security for the payment of the note, and thereupon the plaintiff discounted the note, paying $7,500 less three months' interest therefor, and taking the said agreement as collateral security by an instrument of assignment which provided, among other things, that the assignment was made " subject to conditions therein contained."

The contract aforesaid contained a further statement " that the party of the first part may assign the contract or any part thereof to any responsible individual, firm or corporation."

On the tenth day of May the defendant Martin tendered to P. Jesse Matton, the payee of the $7,500 note, the sum of $250 in cash and a new note for $7,250, which were refused.

The substantial question under the circumstances of the case is whether the plaintiff is the holder of the $7,500 note as a negotiable instrument in due course. Section 91 of the Negotiable Instruments Law of this State provides, among other things: " A holder in due course is a holder who has taken the instrument under the following conditions: * * * 4. That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Was there then any infirmity in the instrument or any defect in the title of Martin to negotiate it?

The general rule regarding notes and bills of exchange is that

contemporaneous agreements affecting such notes or bills must as between parties be read in connection with such instruments. (1 Daniel Neg. Inst. [6th ed.] §§ 79, 157.)

Such agreements become binding also upon any succeeding holder or holders who come into ownership with notice of the existence and terms of such contemporaneous agreement.

The plaintiff bank, therefore, having purchased the note in suit and having taken an assignment of the agreement between Martin and Matton as collateral, became charged with knowledge of the contents of such agreement, the written assignment of which pointed out to the plaintiff that the agreement was made " subject to the conditions therein contained." Among the elements of a negotiable promissory note there is the agreement to pay a certain sum at a time and place named absolutely and at all events. Ordinarily any writing of a contemporaneous character which qualifies or modifies the absolutism of such terms constitutes an infirmity and renders the holder of an instrument so affected unable to confer a perfect title.

The plaintiff claims, however, that it acquired the note and the accompanying agreement from the owner and holder in good faith in the ordinary course of business and for full and fair consideration before any breach of the terms of the agreement and that such an acquisition is without flaw or titulary defect. It is undoubtedly the rule in this State that the negotiability of promissory notes is not destroyed by conditions in a contemporaneous memorandum or agreement which leaves the payment of the note dependent upon some future event which may never happen. (*Tradesmen's Nat. Bank* v. *Curtis,* 167 N. Y. 198; *Title Guarantee & Trust Co.* v. *Pam,* 232 id. 441; *Kelso & Co.* v. *Ellis,* 224 id. 535.)

It has been distinctly held that where there was a contemporaneous agreement to deliver coal and where drafts accompanied by acceptance were not to be paid unless the coal was delivered, the terms of such agreement constituted no defense to an action upon the drafts. (*Tradesmen's Nat. Bank* v. *Curtis, supra.*)

In casting about for a reason for this exception to the general rule, it seems that it lies in the fact that the collateral agreement provided merely for a contingency and that the draft retained its negotiable character upon the theory that the contingency might never occur and that the " purchaser was not affected by equities that might never come into being." (*Title Guarantee & Trust Co.* v. *Pam, supra.*)

The note having been acquired by the plaintiff before its maturity and there having been no breach of the agreement existing at the time of acquisition no defense upon such ground is available to the

maker. (*Tradesmen's Nat. Bank* v. *Curtis, supra; Title Guarantee & Trust Co.* v. *Pam, supra.*)

The defendant claims, however, that the collateral agreement controlling the time of payment in the note distinctly provides that the agreement will be renewed, not that it will be paid, and that the rule of uncertainty is not in the case. If this be so, then the plaintiff is not entitled to prevail. But is it so? Here is a note agreeing to pay absolutely in three months. Here too is an agreement providing for the payment only of $250 at the end of three months and a renewal for the balance which agreement is qualified by the defendant's reservation therein that he be allowed to pay it on any renewal day.

The effect of the reservation is to take away from Matton, the payee of the note, the right to procrastinate its payment which he might want to do if it were a good investment and to lodge in the maker the power to pay or to renew as he willed. In other words, the agreement did not absolutely postpone the date of payment of the note. It left the time of payment in uncertainty depending upon the will of the maker. Being unable to draw a distinction between uncertainties such as whether a man will or will not pay a note and whether a company will or will not deliver coal (*Tradesmen's National Bank* case), I am of the opinion that the judgment should be modified so as to permit the plaintiff to recover the $7,500, with interest from May 10, 1921, and as so modified affirmed.

KILEY and VAN KIRK, JJ., concur; HINMAN, J., dissents, with an opinion in which H. T. KELLOGG, Acting P. J., concurs.

HINMAN, J. (dissenting):

The bank had good title to a valid and enforcible paper for which it paid full value but that paper was only a part of the agreement of its maker and the bank knew it. As I understand the cases of *Davis* v. *McCready* (17 N. Y. 230) and *Tradesmen's Nat. Bank* v. *Curtis* (167 id. 194) they simply lay down the rule that the maker of negotiable paper, issued in consideration of a promise of the payee to do something for the former's benefit in the future, will not be permitted to raise the question of lack of consideration against a holder for value in the course of business if the payee fails to perform.

There is no infirmity in the hands of the bank in the absence of a breach by the payee prior to discount and to the knowledge of the bank prior thereto. But I do not find that these authorities so change the usual rules of contract that one having knowledge of the full agreement of a party as represented by two papers

prepared simultaneously as parts of a complete contract can hold the obligor to the performance of something set forth in one of the papers with total disregard of the other. In other words, it may be established as the law of this State that the defense of failure of consideration may not be raised, but that does not cut off all the rights of the maker. He may be compelled to perform even though the payee has not performed, but is there any rule of business or conscience which should require the maker to do something he never agreed to do on his part even if the payee performed and where the holder of the paper knew the facts at the time of discount? Surely that is a perversion of the doctrine of *Davis* v. *McCready* (*supra*) and *Tradesmen's Nat. Bank* v. *Curtis* (*supra*) which would create a liability to pay $7,500 at maturity when in truth and fact the bank at the time of discount knew that only a partial payment at maturity, with the right to renew and to make continued renewals at stated periods was the extent of the promise of the maker.

I agree that the defendant Martin cannot raise the defense of lack of consideration but I hold that the utmost that can be adjudged against him is a liability to carry out his contract according to the tenor of his own agreement as though he had received his boat in conformity with the contract.

The only question remaining is as to whether the defendant Martin tendered performance in accordance with his agreement.

It seems to me that the pleadings and the stipulation are too meagre in statement to permit us to say as a matter of law that he failed. Martin never had anything to do with the bank and never knew of the bank's having discounted the note and taken the assignment as collateral security, until he received notice of protest. He tendered timely performance to Matton and payment and renewal note were refused. It must be presumed that he was not informed at that time of the true situation as the stipulation so indicates. The stipulation gives us no facts as to what the defendant may have done in the way of tender of performance to the bank after receiving notice of protest. The bank may have insisted upon payment of the full $7,500.

I believe that justice requires a new trial to clarify the facts bearing on this question of tender and waiver of right to tender performance by Martin in accordance with his obligations.

H. T. KELLOGG, Acting P. J., concurs.

Judgment modified so as to increase the recovery to $7,500, with interest from May 10, 1921, and as modified affirmed, with costs to the appellant.