**Gina M. GRISANTI, Plaintiff–Appellee,**

**v.**

**William D. CIOFFI, Jr., Defendant–Appellant.**

**Docket No. 01–7802.**

United States Court of Appeals,
Second Circuit.

May 31, 2002.

Carole Dominguin Brown, Law Office of Carole D. Brown, LLC, Stamford, CT, for Plaintiff–Appellee.

John R. Williams, New Haven, CT, for Defendant–Appellant.

Present CALABRESI and CABRANES, Circuit Judges, and MURTHA,* District Judge.

### SUMMARY ORDER

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the District Court be and it hereby is AFFIRMED.

In March 1999, plaintiff-appellee Gina Grisanti filed a complaint in the United States District Court for the District of Connecticut, alleging that defendant-appellant William Cioffi had raped her on four occasions in February and May 1998. She claimed that these rapes and other threatening and harassing conduct by Cioffi constituted a violation of the Violence Against Women Act ("VAWA"), 42 U.S.C. § 13981, as well as assault and battery and intentional infliction of emotional distress. After the Supreme Court declared the VAWA unconstitutional in *United States v. Morrison*, 529 U.S. 598, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000), the case proceeded to trial on the two supplemental state law tort claims.

The jury returned a verdict for Grisanti awarding $2.5 million in compensatory damages and permitting the court to award an additional sum in punitive damages. On cross motions following the verdict, the court reduced the total compensatory damages to $1.25 million and added $416,667 in punitive damages and $3,956.27

---

* The Honorable J. Garvan Murtha, Chief Judge of the United States District Court for the District of Vermont, sitting by designation.

in costs, for a total judgment of $1,670,623.27. Judgment was entered on June 25, 2001.

On appeal, Cioffi argues (1) that the district court admitted unlawful hearsay evidence, (2) that the damages award was excessive, and (3) that the court erred in refusing to instruct the jury that lawful pursuit of custody cannot constitute "extreme and outrageous" conduct so as to support an intentional infliction of emotional distress claim. *See Appleton v. Bd. of Educ.*, 254 Conn. 205, 757 A.2d 1059, 1062 (Conn.2000) (holding that in order for the plaintiff to prevail in a case for liability under intentional infliction of emotional distress, the plaintiff must show that the defendant's conduct was "extreme and outrageous").

■ At trial, over the defense's hearsay objections, Dawn Santos and Delores Rose testified that Grisanti had told them in February and May of 1998 that Cioffi had raped her, soon after the rapes allegedly occurred. This testimony was properly admitted. According to the Supreme Court's decision in *Tome v. United States*, 513 U.S. 150, 115 S.Ct. 696, 130 L.Ed.2d 574 (1995), a prior consistent statement is admissible non-hearsay under Fed.R.Evid. 801(d)(1)(B) if " 'offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive,' " and if the statement was made before the motive to fabricate arose. *Tome*, 513 U.S. at 157, 115 S.Ct. 696 (quot-

ing Fed.R.Evid. 801(d)(1)(B)). The district court properly found that Cioffi had alleged that Grisanti fabricated the rape charges in response to a "critical stage" reached in the parties' custody and visitation dispute in June 1998.[1] Because the alleged statements were made before June 1998, they were properly admitted under *Tome*.

■ To the extent that Cioffi now argues that the District Court misapprehended his charge of recent fabrication, and that he claimed all along that Grisanti's motive to fabricate was hatred caused by his refusal to marry her prior to 1998, we find his claim was not properly preserved for our review. At the close of the November 20, 2000, pretrial conference, the District Court made clear that it understood Grisanti's motive to fabricate as having crystallized at about the time of the June 1998 report to the police:

THE COURT: ... What I'm trying to get at is the motivation that is challenged by the defendant for the plaintiff's claims of rape is the avoiding of an agreement over custody.

[DEF. COUNSEL]: And hatred, and hatred because he wouldn't leave his wife.

THE COURT: And hatred because he wouldn't leave his wife. That all means that only that which is occurring prior to the May '98 reporting to the police, would be relevant.

[PL. COUNSEL]: Well, that's right.

---

1. Specifically, at a pre-trial conference, defense counsel stated:

[I]n the approximate time of June of 1998 there were negotiations regarding custody and there were draft agreements circulating that would have provided for unsupervised visitation at some point—see, Mr. Cioffi is going to testify to that, that he, in order to establish the motive that they were negotiating over custody, there were drafts circulated that talked about a gradual increase in

visitation, and the attorneys were reviewing it, and I'm not going to get into the reasoning behind it, I'm just going to get into the fact that it was happening, but I am going to reserve the right, you know, subject of course to the Court's approval, to argue that that itself was one of the reasons, there was the motive for making up these incidents at that time.

Pre-trial conference, December 6, 2000, p. 84.

Tr. of Nov. 20, 2002, Telephone Pretrial Conf. at 22 (emphasis added). Defense counsel did nothing to correct the District Court's understanding. The District Court's statements following defense counsel's hearsay objection to the Santos testimony[2] and during a colloquy regarding the Rose testimony at the charge conference also illustrate that it understood that the motive to fabricate arose at or near the time of the police reports. *See* Trial Tr. at 491; Tr. Of Charge Conf. at 20–21. Again, defense counsel said nothing regarding the timing of the motive to fabricate. Cioffi similarly failed, in his memorandum in support of his Rule 59 motion, to address the issue of when Grisanti's alleged motive to fabricate arose. Accordingly, any claim based on the District Court's asserted "misunderstanding" of the timing of the alleged motive to fabricate has been waived.

■ Cioffi also argues that the $1.25 million awarded in compensatory damages in this case is excessive, because (1) it is so large that it "shocks the sense of justice," *Gaudio v. Griffin Health Servs. Corp.*, 249 Conn. 523, 733 A.2d 197, 214 (Conn.1999), and (2) under Connecticut law, a plaintiff in a personal injury action cannot collect a larger damages award than she requested in her complaint. Conn. Practice Book § 16–19. In her pleadings, Grisanti requested $250,000 in compensatory damages and $250,000 in punitive damages.

We review for abuse of discretion a district court's judgment as to the excessiveness of a jury's damages award for a state law claim, and are guided by the "damage-control standard" state law supplies. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 438, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Under Connecticut law, "[t]he size of the verdict alone does not determine whether it is excessive. The only practical test to apply ... is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." *Gaudio*, 733 A.2d at 214 (internal citations and quotation marks omitted). We find that the district court did not abuse its discretion in affirming the (reduced) award in this case. We also find that defendant's argument based on Connecticut Practice Book § 16–19, which limits its damages to the amount requested in the complaint, was not properly raised below. Even if it had been raised below, we are doubtful that such a rule is substantive and therefore properly applied in federal court. *See Gasperini*, 518 U.S. at 427, 116 S.Ct. 2211 ("Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law.").

■ Finally, we hold that the district court did not err in refusing to give a jury charge stating that attempts to gain custody of a child cannot constitute "extreme and outrageous" conduct under Connecticut law. Although a litigant is entitled to have the jury instructed as to his claims

---

2. With respect to the Santos testimony, the District Court effectively sustained defense counsel's hearsay objection by instructing the jury to consider the testimony only for the fact that Grisanti made the statements, and not for the truth of the statements themselves. Trial Tr. at 491–92. Arguably, if Grisanti's motive to fabricate arose prior to the time she made the statements, they would have been inadmissible pursuant to Fed.R.Evid. 401 or 403 even for the limited purpose for which they were admitted by the District Court. But defense counsel did not tell the district Court that Cioffi contended that the motive to fabricate arose prior to the statements, and did not make any objection beyond the hearsay objection effectively sustained by the District Court.

and theories of law if supported by the evidence and if they are brought to the attention of the court, *see Carvel Corp. v. Diversified Mgmt. Group, Inc.*, 930 F.2d 228, 230 (2d Cir.1991), "[a]s a general rule [a reviewing court] will not upset a judgment ... if the charge actually given was correct and sufficiently covered the essential issues." *Id.* at 231; *see also Plagianos v. Am. Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir.1990) (per curiam) ("A new trial is warranted if, taken as a whole, the jury instructions gave a misleading impression or inadequate understanding of the law."). The charge given by the district court in this case properly instructed the jury on the elements of the tort of intentional infliction of emotional distress, emphasizing that "the plaintiff must establish more than unpleasant or uncomfortable behavior on the part of the defendant" and that "[m]ere insults and indignities or annoyances that are not extreme or outrageous are not enough." The jury was further instructed that "[t]he conduct must exceed all bounds usually tolerated by decent society and be of a nature which is especially calculated to cause and does cause mental distress of a very serious kind." Despite numerous requests by the district court that he do so, the defendant declined to submit a proposed instruction on whether attempts to gain custody of a child could ever constitute "extreme and outrageous" conduct. Under these circumstances, the charge given was not erroneous.

We have considered all of appellant's arguments and find them to be meritless. Accordingly, we AFFIRM the judgment of the district court.