John STUBBS, Plaintiff–Appellant,

v.

C.O. Robert DUDLEY, individually and as an employee of the New York Department of Corrections, Defendant–Appellee,

and

Robert E. McClay, individually and as Superintendent of the Arthur Kill Correctional Facility; C.O. Clemmons (phonic), individually and as an employee of the New York Department of Corrections; C.O. Lewis, (phonic), individually and as an employee of the New York Department of Corrections; Robert A. Hoke, individually and as Deputy Superintendent of Programs of the Arthur Kill Correctional Facility; C.O. Domenico 'Rufino', individually and as employee of the New York Department of Corrections; and C.O. 'John' Ranzer, individually and as an employee of the New York Department of Corrections, Defendants.

No. 836, Docket 87–2402.

United States Court of Appeals, Second Circuit.

Argued March 2, 1988.

Decided June 13, 1988.

Arthur G. Nevins, Jr., New York City, for plaintiff-appellant.

Barbara B. Butler, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen., Frederic L. Lieberman, Asst. Atty. Gen., New York City, on the brief), for defendant-appellee.

Before KAUFMAN, OAKES, and NEWMAN, Circuit Judges.

JON O. NEWMAN, Circuit Judge:

This appeal concerns the sufficiency of evidence to support a jury verdict in favor of a prisoner claiming that a corrections officer violated his constitutional rights by deliberately failing to protect him from injury by other prisoners. John Stubbs appeals from a judgment of the District Court for the Eastern District of New York (John L. Caden, Magistrate) entered in favor of defendant-appellee John Dudley notwithstanding a jury verdict finding Dudley liable under 42 U.S.C. § 1983 (1982) for violating Stubbs' constitutional rights under the Eighth and Fourteenth Amendments. The jury had awarded Stubbs $26,000 in compensatory damages for injuries sustained in a beating by his fellow inmates at the Arthur Kill Correctional Facility. Magistrate Caden granted defendant's motion for judgment notwithstanding the vedict (n.o.v.) on the ground that the evidence did not support a finding that Dudley was deliberately indifferent to Stubbs' safety. We reverse and remand.

### Background

Viewed in the light most favorable to Stubbs, the evidence establishes that the following events occurred on February 4, 1977, at the Arthur Kill Correctional Facility on Staten Island, New York, where Stubbs was an inmate. After dinner, Stubbs left his cell to make a telephone call when he was confronted in the "C" Corridor by approximately twenty to thirty inmates, apparently Muslims who were angry at Stubbs for unclear reasons. Some of the men were armed, at least one with a knife. Stubbs was not armed. Hostile words were exchanged, and at least one of the men attempted to strike Stubbs. In fear of being harmed, Stubbs ran down the "C" Corridor with the group of men in pursuit. Stubbs passed through a set of double doors and turned a corner, entering the "Main" Corridor. As he turned the corner, Stubbs saw two corrections officers standing next to a locked door, midway down the corridor, which led to the administration area. One of the corrections officers was defendant Dudley. Stubbs ran toward the defendant yelling, "Help! Open the door, open the door!" Dudley and the other officer opened the door, but immediately went through it and closed and locked it behind them, leaving Stubbs to fend for himself in the main corridor.

Stubbs stood for a moment trying to open the locked door. Through the plexiglass of the door he could see Dudley observing his desperate predicament. As his assailants neared him, Stubbs turned and ran farther down the hallway to the "B" Block telephone room, where two other corrections officers were stationed. These officers, Lewis and Clements, hid behind a plastic partition. Stubbs, now cornered, was quickly overpowered by the group of inmates. He was severely beaten and pos-

sibly stabbed, and required hospitalization as a result of his injuries.

The section 1983 claim was tried by agreement before Magistrate Caden and a jury. Before the jury trial, all of Stubbs' state law claims were dismissed, as were the federal claims against all defendants other than appellee Dudley and Lewis, the corrections officer in the telephone room. Statute of limitations and qualified immunity defenses raised by Dudley were rejected both by Judge Henry Bramwell, to whom the case was originally assigned, and upon renewal by Magistrate Caden.

The jury returned a verdict in favor of defendant Lewis and against defendant-appellee Dudley. Compensatory damages of $26,000, but no punitive damages, were awarded to Stubbs. By Memorandum and Order dated September 3, 1987, Magistrate Caden granted Dudley's motion for judgment n.o.v., *see* Fed.R.Civ.P. 50(b).

### Discussion

At the outset, we reject appellant's procedural challenges to the judgment n.o.v. ruling. Dudley's motion for a directed verdict at the close of plaintiff's case was renewed at the close of all the evidence and challenged the sufficiency of the evidence with adequate precision to preserve the issue under Rule 50(b). Though the motion primarily emphasized a qualified immunity defense, it fully apprised appellant of Dudley's basic contention that the evidence was insufficient to support the deliberate indifference claim. *See Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 586–87 (2d Cir.1987). Appellant's additional claims of procedural irregularities are without merit.

■ The standard for granting a motion for judgment n.o.v. is appropriately strict. A verdict may be directed under Rule 50 only if, "without weighing the credibility of the witnesses or otherwise considering the weight of the evidence, there can be but one conclusion as to the verdict that reasonable [persons] could have reached." *Simblest v. Maynard*, 427 F.2d 1, 4 (2d Cir.1970). *See also Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 573 (2d Cir.), *cert.*

*denied*, 459 U.S. 838, 103 S.Ct. 86, 74 L.Ed.2d 80 (1982); 9 C. Wright & A. Miller, *Federal Practice and Procedure* § 2524 (1971). Alternative versions of this standard have recently been summarized:

> [E]ither there must be "such a complete absence of evidence supporting the verdict that the jury's finding could only have been the result o[f] sheer surmise and conjecture" or the evidence must be so overwhelming that reasonable and fair-minded persons could only have reached the opposite result. *Newmont Mines Ltd. v. Hanover Insurance Co.*, 784 F.2d 127, 132 (2d Cir.1986) (quoting *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 688–89 (2d Cir.1983)).

*Baskin v. Hawley*, 807 F.2d 1120, 1129 (2d Cir.1986). We conclude that in the present case this standard was not met.

An inmate who is injured as a result of a prison official's deliberate indifference to his safety may maintain a damage action for the deprivation of his civil rights under the Eighth and Fourteenth Amendments. *Whitley v. Albers*, 475 U.S. 312, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986); *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976); *Bass v. Jackson*, 790 F.2d 260, 262–63 (2d Cir.1986); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir.1985) (per curiam); *Williams v. Vincent*, 508 F.2d 541, 543–44, 546 (2d Cir. 1974). Though the law is now settled that mere negligence will not give rise to a constitutional violation, *see Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), it is equally clear that a showing of "express intent to inflict unnecessary pain is not required," *Whitley v. Albers, supra*, 106 S.Ct. at 1084 (citing *Estelle v. Gamble, supra* ); *cf. O'Neill v. Krzeminski*, 839 F.2d 9, 11 n. 1 (2d Cir. 1988) (proof that defendant acted "maliciously and sadistically" permissible but not required to establish use of excessive force).

■ The jury charge in the present case faithfully conveyed this understanding of the applicable legal framework. Magistrate Caden instructed the jury, in pertinent part:

You must find for a defendant unless you find that the plaintiff has proven that that defendant acted with an intent to cause harm to the plaintiff or with deliberate indifference to plaintiff's safety and not in a good faith effort to carry out his lawful duties. In considering this question, consider the fact that a defendant must make quick decisions and act promptly and under tension created by crisis.

More detailed instructions, describing the alternative degrees of intent upon which a plaintiff's verdict might rest, were also given to the jury. Magistrate Caden carefully defined "intent" and conduct done "intentionally," "deliberately," or "recklessly." He also pointedly instructed the jury that "[m]ere negligence, that is, failure to act with reasonable care under the circumstance to protect plaintiff, does not rise to the level of a violation of civil rights." [1]

After the jury, thus properly instructed, returned a verdict in favor of Stubbs, Magistrate Caden granted judgment n.o.v. evidently in the mistaken belief that the Supreme Court's recent decision in *Whitley v. Albers, supra,* requires something more than "deliberate indifference" to establish a constitutional violation under the circumstances of this case.[2] Though he used the phrase "deliberate indifference" in discussing the constitutional standard in his judgment n.o.v. decision, Magistrate Caden appears to have read *Whitley* as requiring a finding of malice in order to meet this standard. This was error.

*Whitley* concerned a claim brought by a prisoner shot in the leg by a guard during a prison riot. The Court determined that the "deliberate indifference" standard normally applicable to such a claim may not sufficiently take into account "competing institutional concerns" where the officials are "making and carrying out decisions involving the use of force to restore order in the face of a prison disturbance." 106 S.Ct. at 1084. A standard of "obduracy and wantonness" was deemed appropriate under these special circumstances. We need not decide, however, whether the jury's verdict could be sustained even under the *Whitley* "wantonness" standard. *Whitley* involved a full-blown prison riot. In the present case the condition creating the "prison disturbance" was the Stubbs incident itself: twenty or more angry prisoners wanted to hurt one prisoner.[3] The issue put to the jury was whether the defendant corrections officers acted unconstitutionally in allowing them to do so. The only "competing institutional concern[ ]" in this context was whether the defendants, by aiding Stubbs, might plausibly put prison security (or their own safety) at risk. This was for the jury to decide under the "deliberate indifference" standard. *Whitley* does not require that every case involving a guard's failure to protect a prisoner threatened by other prisoners be decided under a heightened standard appropriate for determining the lawfulness of using force to quell a prison riot. *See Pressly v. Hutto,* 816 F.2d 977, 979 (4th Cir.1987) (*Whitley* standard applicable only "where physical force [is] directly applied by prison officials to maintain security or discipline").

We are satisfied that the jury, properly charged, could reasonably have found that Dudley, without plausible justification, displayed deliberate indifference in failing to prevent the beating of Stubbs despite having had the opportunity to do so. The evidence supports the conclusion that Dudley had adequate time to assess the serious threat facing Stubbs and a fair opportunity

1. At one point in the middle of the trial, Magistrate Caden interrupted plaintiff's cross-examination of a witness to instruct the jury at some length that "[w]e are not talking, in this particular case, about whether or not these Correction Officers acted reasonably or unreasonably. That's not involved in this case. . . . Negligence has nothing to do with this case."

2. The Magistrate had previously refused defendants' proposed charge, requested under the purported authority of *Whitley,* which would have required the jury to find that the defendants acted "maliciously and sadistically for the very purpose of causing harm."

3. There was also some evidence that the prison's Muslim population was engaged in a "sit-down strike" on the day of the incident. However, this situation apparently created no unusual threat to prison security.

to afford him protection at no risk to himself or the security of the prison but nevertheless callously refused to permit Stubbs to pass with him to safety behind the administration door. This conduct could reasonably be found to be deliberate indifference, "tantamount to a knowing willingness that [the harm] occur." *Whitley v. Albers, supra,* 106 S.Ct. at 1085 (citation omitted). Our confidence in this conclusion is reenforced by the fact that the jury returned a verdict in favor of the defendant Lewis. The jury apparently understood that the corrections officers were not required to risk their own welfare in order to protect Stubbs. The Constitution imposes a standard of human decency, not superhuman courage. The jury was entitled to find that defendant Dudley failed that standard in this case.

We have considered appellee's alternative arguments for dismissal on statute of limitations and qualified immunity grounds and agree with Judge Bramwell and Magistrate Caden that they are without merit.

The judgment of the District Court is reversed. The case is remanded with instructions to enter judgment for the plaintiff upon the jury's verdict and to consider plaintiff's claim for attorney's fees under 42 U.S.C. § 1988 (1982).