**Vincent MORELLO, Plaintiff,**

v.

**Charles JAMES, J. Nowakowski and Harold J. Smith, Defendants.**

**No. 85–CV–1430L.**

United States District Court,
W.D. New York.

June 17, 1992.

James C. Gocker, Harris, Beach & Wilcox, Rochester, N.Y., for plaintiff.

Charles D. Steinman, Asst. Atty. Gen., Rochester, N.Y., for defendants.

## DECISION AND ORDER

FISHER, United States Magistrate Judge.

In this action pursuant to 42 U.S.C. § 1983, plaintiff claimed that the defendants violated his constitutional rights by intentionally depriving him of a legal brief which had been prepared by an inmate law clerk for a pending state court appeal. Plaintiff's property was allegedly lost when he was transferred from the Collins Correctional Facility (Collins) to the Attica Correctional Facility (Attica) on November 7, 1983. At that time plaintiff and correction officer Nowakowski packed and inventoried plaintiff's property at Collins. Plaintiff claimed that his property included 11 file folders containing legal documents and an appellate brief. According to his claim, when plaintiff's property was returned to him at Attica on November 13, 1983, 2 of his 11 legal file folders were missing, one of which contained his appellate brief for an action pending in the Appellate Division. Plaintiff alleged that corrections officer Nowakowski searched his bags and stole the missing legal materials. Defendants deny any personal involvement in the missing legal brief.

Charles James is the former Superintendent of Collins and Harold Smith is the former Superintendent of Attica. They were alleged to be liable as supervisors.

A jury trial was held in this matter between October 1 and October 4, 1991. The jury found that the defendants did not violate plaintiff's constitutional rights.

Plaintiff's counsel filed a Motion for a New Trial pursuant to Fed.R.Civ.P. 59(a) on behalf of the plaintiff and a Motion to Withdraw from representation of the plaintiff on October 18, 1991. This court granted the motion to withdraw on October 18, 1991. Plaintiff also submitted a letter in support of the Motion for a New Trial dated October 5, 1991, which was filed with the Court on November 20, 1991 (docket entry # 70). In plaintiff's *pro se* submission he moves for a new trial under Fed.R.Civ.P. 59, or in the alternative for a motion not withstanding the verdict pursuant to Fed.R.Civ.P. 50(b).

### A. *Overview*

Plaintiff moves for a new trial on the grounds that (1) the court declined plaintiff's request that the jury be charged that Smith and James could be held liable for the loss of plaintiff's legal brief if their conduct amounted to "gross negligence," (2) the court improperly charged the jury

that it could consider plaintiff's prior felony conviction on the issue of credibility despite the fact that the prior felony did not relate to his veracity, (3) the verdict was against the weight of the evidence, and (4) the court improperly charged the jury in regard to plaintiff's Court of Claims remedy.

Plaintiff's *pro se* submission offers the following additional grounds in support of a new trial: (1) that the jury improperly used the "beyond a reasonable doubt" standard, (2) the jury did not follow a "conviction of its justice," (3) the defendants offered testimony which was irrelevant to the action and prejudicial to plaintiff, (4) that the verdict was against the weight of the evidence, and (5) the jury improperly relieved the defendants of liability.

The defendants maintain that the jury was properly charged, and that the objections now being raised by plaintiff were fully adjudicated in connection with the trial. Defendants contend that the jury's verdict was supported by the evidence presented at trial. In addition, defendants maintain that the issue of plaintiff's Court of Claims' remedy was resolved against plaintiff in *Love v. Coughlin*, 714 F.2d 207 (2d Cir.1983), and that the jury instructions followed that case.

Each of plaintiff's contentions are without merit and the motion for a new trial is denied.

## B. *The Weight of the Evidence*

The standard for granting a motion for a new trial has been left to judicial discretion by Federal Rule of Civil Procedure 59(a). "[T]he district court 'ordinarily should not grant a new trial unless it is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" *Hygh v. Jacobs*, 961 F.2d 359, 365–66 (2d Cir.1992) (finding that the record amply supported the findings of liability against the defendant) (citing *Smith v. Lightning Bolt Prods., Inc.*, 861 F.2d 363, 370 (2d Cir.1988); *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir.1983); *Bevevino v. Saydjari*, 574 F.2d 676, 684 (2d Cir.1978)).

In *Bevevino*, the Second Circuit approved the standard set forth in 6A *Moore's Federal Practice*, ¶ 59.08[5], at 59–160 through 59–161 (2d ed. 1973), on a motion for a new trial:

The trial judge, exercising a mature judicial discretion, should view the verdict in the overall setting of the trial; consider the character of the evidence and the complexity or simplicity of the legal principles which the jury was bound to apply to the facts; and abstain from interfering with the verdict unless it is quite clear that the jury has reached a seriously erroneous result. The judge's duty is essentially to see that there is no miscarriage of justice. If convinced that there has been then it is his duty to set the verdict aside; otherwise not.

*Bevevino v. Saydjari*, 574 F.2d at 684. In addition, "[t]he court may weigh the evidence itself and may consider issues of credibility." *In re Joint Eastern & Southern Districts Asbestos Litigation*, 762 F.Supp. 519, 526 (E.D.N.Y., S.D.N.Y.1991).

■ The jury verdict in this case should stand. Plaintiff claimed at trial that he and corrections officer Nowakowski packed up his belongings at Collins for his transfer to Attica. Plaintiff claimed that Nowakowski took possession of his property at Collins and was therefore responsible for his missing legal brief. The evidence presented was undisputed that plaintiff assisted Nowakowski when he packed up plaintiff's belongings at Collins; they each recorded 11 file folders. It was also undisputed that there were only 9 file folders when plaintiff's belongings were received at Attica. Both the plaintiff and Nowakowski testified that the bags were sealed in the plaintiff's presence at Collins. The defense theory questioned whether the legal brief even existed. Nowakowski testified that he did not take plaintiff's legal brief nor did he have any recollection of the brief. There was no direct evidence presented to show that Nowakowski stole or lost plaintiff's legal brief, nor did plaintiff present a motive for such action. Plaintiff did not present evidence that he knew Nowakowski prior to November 7, 1983, when plain-

tiff was transferred from Collins to Attica. The jury verdict with respect to Nowakowski was not a manifest injustice nor did it seem unreasonable given the testimony that was presented. The jury may have decided that someone, other than Nowakowski, was responsible for the missing legal brief. The jury may have also decided that the legal brief never existed. Nowakowski's testimony did not contain any inconsistencies, nor is there any reason in the record to question his testimony that he did not remove a legal brief from plaintiff's personal belongings.

Similarly, with regard to former superintendents James and Smith, a new trial is not warranted. Plaintiff essentially claimed that both superintendents exhibited a reckless disregard for or were deliberately indifferent to his efforts to recover his missing legal brief. In support of plaintiff's claim against Smith, he presented a copy of a memo he sent to P. Priestly, the Records Coordinator at the Attica Correctional facility, explaining that his legal brief was missing and requesting information on how he could locate it. Plaintiff's Exhibit 8. Plaintiff received a reply from R.D. Case, a corrections officer in the Head Clerk's Office at Attica, explaining that the items he inquired about were not found with his personal property, and advising him to write to the inmate record coordinator at Collins. The defense theory was that corrections officer Case did all that was asked of him and more to locate plaintiff's legal brief at Attica. Defendants maintained that Smith requested the assistance of the corrections staff to find plaintiff's legal brief. Although the plaintiff argued that Smith's efforts were inadequate, the verdict was neither seriously erroneous nor a miscarriage of justice. Although this court has conducted a review of the trial testimony in this case, I am not inclined to disagree with the credibility judgment of the jury absent some inconsistency in the testimony or some other compelling reason.

With regard to superintendent James, plaintiff attempted to show that James failed to assist him in recovering his missing legal brief. Plaintiff attempted to present evidence that Collins had a pervasive problem with the loss of inmates' personal property. James testified that he always took appropriate steps to remedy the situation when he was made aware of one.

Plaintiff wrote to superintendent James shortly after his transfer to Attica. Plaintiff's Exhibit 4. Plaintiff requested James' assistance in locating his legal brief. James made a notation on the document to Mel Williams, the Deputy Superintendent at Collins, to "[p]lease check into this especially the legal papers." Mel Williams testified that, although he could not recall, he most likely conducted a search to locate plaintiff's legal brief. Williams testified that he wrote to plaintiff requesting additional information to search for the missing brief. Williams testified that plaintiff did not respond to that request. Although Williams testified that he could not be certain, he described his likely response to plaintiff's inaction as an assumption that either the brief had been found or that plaintiff had aborted his efforts. James did not ignore plaintiff's request for assistance. On the contrary, he assigned the task to the second-in-command at Collins. It was plaintiff who abandoned his search for the brief at Collins by not providing Williams with additional information which would have facilitated the search.

The jury's verdict indicates that they agreed that superintendent James acted consistently with plaintiff's constitutional rights when plaintiff notified him of his missing legal brief. The jury verdict was not seriously erroneous or a miscarriage of justice. Therefore, plaintiff's motion for a new trial with respect to superintendents Smith and James is denied.

### C. *The Jury Instructions*

■ With respect to the improper jury instructions claim, the Second Circuit has held that "[w]hen jury instructions, taken as a whole, give the jury a misleading impression or inadequate understanding of the law, a new trial is warranted." *Carvel Corporation v. Diversified Management Group*, 930 F.2d 228, 232 (2d Cir.1991)

(granting a motion for a new trial on the ground that the jury instructions were misleading); *Plagianos v. American Airlines, Inc.*, 912 F.2d 57, 59 (2d Cir.1990).

The jury received proper instructions following the trial in this action. The court followed Second Circuit precedent in denying plaintiff's request to charge the jury that "gross negligence" would establish a due process violation. Footnotes 12 and 16 of the proposed jury charge, distributed to the parties prior to summations, discuss at length the law governing the Court's denial of plaintiff's request to charge the "gross negligence" standard. The discussion is reproduced here.

Although the Supreme Court has left open the question whether gross negligence or reckless conduct (in the civil law sense) may make out a constitutional violation under the Due Process Clause, *Whitley v. Albers*, 475 U.S. 312, 327, 106 S.Ct. 1078, n. 3, 89 L.Ed.2d 251 (1986), and so evidently has at least one panel of the Second Circuit, *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir.1987), this circuit has, however, taken the lead with the Seventh Circuit in holding that deliberate indifference or recklessness are the only "alternative degrees of intent" which will establish a constitutional violation. *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir.1991) (Eighth Amendment); *Stubbs v. Dudley*, 849 F.2d 83, 86–87 (2d Cir.1988) (Eighth and Fourteenth Amendments); *Bass v. Jackson*, 790 F.2d 260, 262–63 (2d Cir.1986) (Due Process Clause); *Ayers v. Coughlin*, 780 F.2d 205, 209 (2d Cir.1985) (Eighth Amendment and Due Process Clause); *Williams v. Vincent*, 508 F.2d 541, 546 (2d Cir.1974). The Seventh Circuit adopted the Second Circuit's approach in *Archie v. City of Racine*, 847 F.2d 1211, 1218–20 & n. 8 (7th Cir.1988) (en banc) (due process clause), although it had formulated a similar approach stressing that recklessness in the criminal law sense as the appropriate constitutional standard dividing state tort law from the constitutional threshold. *See Duckworth v. Franzen*, 780 F.2d 645, 652–53 (7th Cir.1985), which was cited with approval by the Supreme Court in two Eighth Amendment cases. *Wilson v. Seiter*, —

U.S. ——, 111 S.Ct. 2321, 2325, 115 L.Ed.2d 271 (1991); *Whitley v. Albers*, 475 U.S. 312, 321, 106 S.Ct. 1078, 1085, 89 L.Ed.2d 251 (1986). *See also, Duane v. Lane*, 959 F.2d 673, 676 (7th Cir.1992). Recent Seventh Circuit cases persuasively hold that proof of "gross negligence" only is insufficient to establish liability because it is an "indistinct" species of ordinary negligence which was held insufficient in *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). *McGill v. Duckworth*, 944 F.2d 344, 349 (7th Cir.1991) (*"Wilson [v. Seiter]* resolved the conflict between the objective and subjective understandings of recklessness in favor of *Franzen's* subjective standard."); *id.* 944 F.2d at 348 ("our in banc opinion in *Archie* extended its [Franzen's] approach to cognate questions under the due process clauses"); *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991) ("We held in *Archie* that neither negligence nor even gross negligence is a sufficient basis for liability.") These persuasive holdings, and the unbroken line of Second Circuit authority showing that the only permissible "alternative degrees of intent" are recklessness and deliberate indifference, paved the way for the approach the court took in the jury charge.

With respect to the appropriate standard for supervisory liability, the court instructed the jury on the standards of deliberate indifference and recklessness as stated in footnote #16. The court stated in footnote #16 that in light of *Wilson v. Seiter*, and *City of Canton, Ohio v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 1204–05, 1206, 103 L.Ed.2d 412 (1989), and the rejection of gross negligence for correction officer liability for the reasons stated above, it would be anomalous to charge a lesser standard for a supervisor. In *Barbera v. Smith*, 836 F.2d 96, 99 (2d Cir.1987), the Second Circuit required a showing of "reckless" management of subordinates, and *Al–Jundi v. Estate of Rockefeller*, 885 F.2d 1060–66 (2d Cir.1989) resolved the case according to the deliberate indifference standard notwithstanding a simple reference to the earlier cases which mentioned "gross negligence." *See also Bass v. Jackson*, 790

F.2d at 263 (allegations of supervisory liability must be "sufficient to implicate them in his claim of deliberate indifference"); *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.1979) ("the failure to ... supervise law enforcement officers must be so grossly negligent *as to constitute 'deliberate indifference'*") (emphasis supplied). Therefore, this court properly instructed the jury on the level of intent required to make out a due process violation against the defendants. *See also, Collins v. City of Harker Heights, Texas,* —— U.S. ——, 112 S.Ct. 1061, 1070, 117 L.Ed.2d 261 (1992); *Scott v. Kelly,* 962 F.2d 145, 147 (2d Cir.1992).

■ Plaintiff also moves for a new trial on the ground that the court improperly instructed the jury that plaintiff's prior felony conviction could be considered in determining his credibility. Fed.R.Evid. 609(a), which was amended in 1990, governs the admissibility of prior felony convictions in a civil action. "As a result of the 1990 amendment, ... witnesses in civil cases may be impeached by any felony conviction ... subject to the balancing provisions of Rule 403." 3 *Weinstein's Evidence* ¶ 609[06], at 609–72 (1991). To prevent undue prejudice to the plaintiff under Rule 403, the court ruled that defense counsel could only raise the prior felony conviction without inquiring into the nature of the underlying offenses.[1] The jury charge stated:

> You may consider the fact that the witness who testified is a convicted felon in deciding how much of his testimony to accept and what weight, if any, it should be given. But it is entirely for you to consider if, in the circumstances, this conviction relates at all to his credibility on this witness stand.

The court limited defense counsel's questioning to the fact that plaintiff had a prior felony conviction, without allowing questions related to the nature of that conviction, to avoid undue prejudice to the plaintiff under Fed.R.Evid. 403. Given plaintiff's manifest status as a prisoner in a

state penitentiary, this would have been known to the jury in any event. *Brown v. Flury,* 848 F.2d 158, 159–60 (11th Cir.1988).

Plaintiff's counsel argued that the jury should not have been instructed that they could consider plaintiff's prior felony conviction in deciding on the his credibility because the crimes did not involve dishonesty. It is true that the 1990 Amendment intended to discourage admission of prior felonies which did not relate to dishonesty through the device of Rule 403 balancing which was not theretofore available under the doctrine of *Campbell v. Greer,* 831 F.2d 700, 706–07 (7th Cir.1987), adopted in *Green v. Bock Laundry Machine Company,* 490 U.S. 504, 109 S.Ct. 1981, 1993, 104 L.Ed.2d 557 (1989). But court decisions prior to the 1990 Amendment which have used Rule 403 balancing either because they were in error or simply provided an alternative holding have permitted evidence of prior rape convictions, at least in cases which "turn on the jury's credibility determinations." *Jones v. Board of Police Commissioners,* 844 F.2d 500, 506 (8th Cir. 1988) ("while it is part of the conventional wisdom to regard crimes such as robbery, rape, and forcible sodomy as being less probative of a witness' veracity than are offenses involving *crimen falsi,* a number of courts have approved the admission of evidence of such crimes for purposes of assessing credibility."); *see also, Campbell v. Greer,* 831 F.2d at 709 (Will, J., concurring). Moreover, I have substantial difficulty with the proposition that rape, particularly the kind of rape and abuse of one's own children that is present here, does not bear on plaintiff's credibility. As in *Campbell v. Greer,* 831 F.2d at 707, plaintiff offers no empirical evidence to suggest that this is so, and accordingly, the "conventional wisdom" that rape may be less relevant to credibility than *crimen falsi* but is nevertheless relevant is one that I followed.

Although perhaps "[t]here is no precedent for withholding the identity of the

---

1. Plaintiff was convicted in 1980 under a 26 count indictment charging him with the Rape, Sodomy and Sexual Abuse of his children.

felony from the jury when using a conviction to impeach a witness's testimony," *Campbell v. Greer*, 831 F.2d at 707, and the procedure employed at this trial did not intend to create one, *see also, Hernandez v. Cepeda*, 860 F.2d 260, 263 (7th Cir.1988), the fact that the nature of the crimes involved were not disclosed avoided undue prejudice to plaintiff. The balancing under Rule 403 was done, although not to exclude the matter entirely. Therefore, the decision to charge the jury on the matter was not error.

■ Finally, plaintiff contends that the court improperly instructed the jury that an adequate state court remedy existed in the New York State Court of Claims for lost or stolen property. Plaintiff maintained that a state court remedy did not exist for 26 of the 70 lost property claims at Collins because the Department of Corrections failed to resolve the claims within the 90 day claim limitations period set forth in the Court of Claims Act. N.Y.Ct.Cl.Act § 10. Plaintiff's counsel argued at the charge conference that the wording of the charge did not permit the jury to find that Smith and James exhibited a deliberate indifference to the inmate's property rights by virtue of the existence of 26 property claims which were not resolved within the 90 day claim period. Plaintiff's counsel maintained that those inmates were therefore foreclosed from pursuing a state court remedy.

After plaintiff's counsel indicated that he would raise that issue in summation, defense counsel requested that the court charge the jury about the adequate post deprivation state court remedy. Plaintiff's counsel argued that the evidence presented suggested that defendants Smith and James had constructively abrogated an inmate's right to an adequate post deprivation remedy by failing to resolve missing property claims within the 90 "day" claim period. Defense counsel objected to any mention of the Court of Claims Act on the ground of relevancy because there had been no evidence at trial that plaintiff had attempted to pursue a claim in the Court of Claims.

The jury charge on the issue of supervisory liability and the effect of an adequate post deprivation state court remedy was delivered as follows:

[I]f these supervisors knowingly tolerated deprivations of *ordinary* personal property at the hands of correctional officials, and this is for you to determine whether that occurred, the provision by the State of a Court of Claims remedy would mean that those supervisors did not thereby have a custom or policy tolerating repeated violations of an inmate's constitutional rights. But a supervisor also may be held liable for acquiescing with recklessness or deliberate indifference in a prior pattern of conduct, or a policy or custom, which he knows or constructively knows carries a substantial risk of the kind of harm alleged here—i.e., loss of a legal brief and resulting obstruction of an inmate's access to the courts. In other words, even though the claimed deprivations of *ordinary* property belonging to these other inmates would not violate those inmate's constitutional rights, because they had a post-deprivation remedy in the New York Court of Claims, if you find that a particular supervisory defendant knew or constructively knew that a pattern or practice under which *ordinary* property deprivations were allowed to continue without corrective action created a substantial risk that an inmate would be deprived *of important legal materials* obstructing his right of access to the Courts, and that supervisory official recklessly or deliberately failed to act to remedy the situation, you may find that supervisory defendant liable.

(emphasis supplied).

Defense counsel relied on the Second Circuit decision in *Love v. Coughlin*, 714 F.2d 207 (2d Cir.1983), and argued that the court properly charged the jury that an adequate state court remedy existed for the loss of prisoner's personal property, other than legal documents. The Second Circuit held in *Love* that where an inmate loses personal property, under the procedural due process clause, "no civil rights action lies if the

state provides an adequate compensatory remedy." *Id.* 714 F.2d at 208–209. *See Parratt v. Taylor,* 451 U.S. 527, 543–44, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981). The court in *Love* found that the state provided adequate post-deprivation remedies, in the Court of Claims, when two duffel bags belonging to Love, which contained personal property and legal documents, were allegedly lost during a transfer as a result of the facility's negligence. *Love v. Coughlin,* 714 F.2d at 209 (citing N.Y.Ct.Cl.Act §§ 8, 9.2 (McKinney 1963); *Williams v. Coughlin,* 76 A.D.2d 957, 428 N.Y.S.2d 732 (3rd Dept.1980). Where there is an alleged intentional taking of legal documents which implicates the substantive due process right of access to the courts, however, the *Parratt* post-deprivation rule is not applicable. *Morello v. James,* 810 F.2d 344, 347 (2d Cir.1987).

Here there were no allegations that the 26 claims of lost inmate property involved the intentional deprivation of legal documents. Rather, based upon the exhibits presented at trial,[2] nearly all of the 26 claims involved personal property other than legal documents, which was lost as a result of negligence. Therefore, the claims implicate the procedural due process clause and the *Parratt* post-deprivation rule is applicable. *See generally, Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 982–83, 108 L.Ed.2d 100 (1990).

Plaintiff argues that, because the post-deprivation remedy was not available to the 26 inmates because the corrections staff failed to resolve the claims within the 90 day period, the wording of the charge essentially instructed the jury not to consider the 26 incidents of lost personal property in deciding on whether the superintendents were deliberately indifferent. But that is not a fair characterization of what the charge stated. The jury in fact was told to consider those losses if they provided a basis to conclude that the supervisory defendants knew of them and deliberately failed to remedy a situation creating a sub-

stantial risk that inmate legal materials would be similarly lost. In the words of my charge, "[I]f you find that a particular supervisory defendant knew or constructively knew that a pattern or practice under which ordinary property deprivations were allowed to continue without corrective action created a substantial risk that an inmate would be deprived of important legal materials obstructing his right of access to the courts, and that supervisory official recklessly or deliberately failed to act to remedy the situation, you may find that supervisory defendant liable." This is precisely what plaintiff's counsel asked me to charge.

As a separate matter, whether the 26 individual losses of ordinary or non-legal property could be characterized as a constitutional violation *inter sese* is largely irrelevant to the inquiry whether those losses, and defendant's knowledge of them, were suggestive of, or created a substantial risk of, discretely constitutional harm regarding the legal materials. Although it might have been unnecessary to tell the jury of the *Love* principle by way of getting plaintiff's point across, it could not have distracted the jury from its ultimate task of finding whether, as a factual matter, the losses of ordinary property without corrective action might provide a basis to find that defendants deliberately denied plaintiff his legal materials, because sanctioned losses of ordinary property might inevitably create a condition in which legal materials would be lost.

If anything, however, the charge could be criticized, especially by reference to the words "created a substantial risk" for insufficiently protecting defendants from a finding of liability for negligence or gross negligence. Courts should not "impose federal duties that are analogous to those traditionally imposed by state tort law." *Collins v. City of Harker Heights, Texas,* — U.S. ——, 112 S.Ct. 1061, 1020, 117 L.Ed.2d 261 (1992). Plaintiff's theory of constitutional deprivation resulting from what might be the foreseeable consequences of continued unremedied ordinary

**2.** The following are several of the exhibits admitted by plaintiff which contained claims filed by inmates at the Collins for lost personal property: (1) exhibit 18, lost sanyo tape player; (2)

exhibit 21, sneakers, a watch, and velour shirts; (3) exhibit 29, lost sneakers; (4) exhibit 30, stereo headset, and (5) exhibit 32, nylon undershirts.

property losses sounds a lot like the claim recently rejected in *Collins*. That case is perhaps distinguishable, but district courts should take it as cautioning against findings of liability under the constitution without the requisite mental culpability, unclouded by notions of risks and foreseeability of the state law or tort variety. *Id.* 112 S.Ct. at 1068–69. We're not quite sure how far the Court will travel down that path, because the plaintiff in *Collins* did "not claim that the city or any of its agents deliberately harmed her husband.... [or] even ... that his supervisor instructed him to go into the sewer when the supervisor knew or should have known that there was a significant risk that he would be injured[,]" *id.* 112 S.Ct. at 1069, and because "it is [still] an unresolved issue whether an allegation of gross negligence or recklessness suffices" to make out a due process claim. *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 992, 108 L.Ed.2d 100 (1990) (O'Connor, J., dissenting). Indeed, the question of "Due Process, ..., is a flexible concept that varies with the particular situation." *Id.* 110 S.Ct. at 984 (majority opn).[3]

My charge insisted on a finding of deliberate or reckless conduct in the criminal sense, but the indicated portions actually benefitted plaintiff and perhaps were, depending upon what the Supreme Court will ultimately do, a rightful cause of complaint by defendants. As a whole, however, the charge did not "give the jury a misleading impression or an inadequate understanding of the law" as it now exists. *Carvel Corporation v. Diversified Management Group,* 930 F.2d at 232.

The grounds raised by plaintiff *pro se* in his letter do not warrant a new trial. Plaintiff's contention that the jury improperly used the "beyond a reasonable doubt standard" and did not follow a "conviction of its justice," is not substantiated in the record. There is nothing in the record to suggest that the jury did not apply the preponderance of the evidence standard in rendering its decision.

Plaintiff maintains that "[t]he testimony of the defendants for the most part did not relate to the relevant issues of the case and were misleading." No particulars are offered. Plaintiff was represented by experienced and well-qualified counsel at trial and a review of the record does not reveal that "widespread" admission of irrelevant testimony occurred. Therefore, plaintiff's motion for a new trial on the ground of the admission of irrelevant or prejudicial testimony is denied. Plaintiff's other assertions that the verdict was against the weight of the evidence and was otherwise improper have been addressed previously in this decision.

## CONCLUSION

Plaintiff's motion for a new trial is denied.

SO ORDERED.

## *APPENDIX*

## JURY CHARGE PART II

## THE STATUTE AND LAW YOU MUST APPLY

The law to be applied in this case is the federal civil rights law which provides a remedy for individuals who have been deprived of their constitutional rights under color of state law. Section 1983 of Title 42 of the United States Code states:

Every person who, under color of any state [law], subjects or causes to be subjected, any citizen of the United States to the deprivation of any rights, privileges or immunities secured by the Constitution, shall be liable to the party injured in an action at law.

## PURPOSE OF THE STATUTE

Section 1983 creates a form of liability in favor of persons who have been deprived of rights, privileges and immunities secured to them by the United States Constitution

---

**3.** Even in the Eighth Amendment context, the Court's recent opinions in *Hudson v. McMillian,* — U.S. ——, 112 S.Ct. 995, 117 L.Ed.2d 156 (1992) illustrate the flexibility in approach to the standards of liability which, as stated in *Albers,* depend on the "differences in the kind of conduct against which an Eighth Amendment objection is lodged." *Whitley v. Albers,* 475 U.S. at 320, 106 S.Ct. at 1084.

and federal statutes. Before section 1983 was enacted in 1871, people so injured were not able to sue officials or persons acting under color of state law for money damages in federal court. In enacting the statute, Congress intended to create a remedy as broad as the protection provided by the Constitution and federal laws.

## ELEMENTS OF A SECTION 1983 CLAIM

To establish a claim under section 1983, plaintiff must establish, by a preponderance of the evidence, each of the following three elements:

First, that the conduct complained of was committed by a person acting under color of state law;

Second, that this conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States; and

Third, that the defendant's acts were the proximate cause of the injuries and consequent damages sustained by the plaintiff.

I shall now examine each of the three elements in greater detail for you.

## FIRST ELEMENT

## WERE THESE DEFENDANTS ACTING UNDER COLOR OF STATE LAW

Whether the defendant committed the acts alleged by the plaintiff is a question of fact for you, the jury, to decide. I will instruct you in a moment on how you will decide that issue. For now, assuming that the defendant did commit those acts, I instruct you that, since the defendants are officials of the State of New York at the time of the acts in question, they were acting under color of state law. In other words, the first statutory requirement has been satisfied, and is conceded by the defendants.

## SECOND ELEMENT

## DEPRIVATION OF CONSTITUTIONAL RIGHT

The second element of plaintiff's claims is that he was deprived of a federal right by the defendants. In order for the plaintiff to establish the second element, he must show these things by a preponderance of the evidence: first, that the defendants committed the acts alleged by plaintiffs; second, that those acts caused the plaintiff to suffer the loss of a right under the First, Fifth and Fourteenth Amendments of the Constitution, and Article IV, Section 2 of the Constitution commonly known as the Privileges and Immunities Clause.[8] This element requires some explanation.

All citizens, including prisoners, have a constitutional right of access to the courts as part of a broader right to petition their government for redress of grievances.[9] The right to access means that a prisoner has a right to proceed *pro se* (that is by himself) with his appeal. Where a prisoner chooses to do so, the state must provide affirmative assistance in the form of adequate law libraries or trained legal assistance, as well as adequate drafting materials and reasonable postage. Although plaintiff does not claim any deficiency in this respect, he does claim that, after satisfying these obligations, the defendants here thereafter deprived him of his *pro se* work product. Obviously, a state cannot satisfy its constitutional obligation by providing a prisoner access to the legal resources necessary to prepare his case and then deprive him of his briefs or memoranda to the court.[10]

The right to petition the courts for redress of grievances is among the most precious of the liberties safeguarded by the Bill of Rights. A prisoner does not shed

---

8. Sources of the right of access: *Murray v. Giarratano,* 492 U.S. 1, 109 S.Ct. 2765, 2771 & n. 6, 106 L.Ed.2d 1 (1989) (plurality opinion) ("consequence of the right to due process of law, ..., and an aspect of equal protection); *Morello v. James,* 810 F.2d 344, 346 (2d Cir.1987) (interpreting *Procup v. Strickland,* 760 F.2d 1107, 1110 n. 4 (11th Cir.1985)); *Griffin v. Coughlin,* 743 F.Supp. 1006, 1021 (N.D.N.Y.1990).

9. *Bounds v. Smith,* 430 U.S. 817, 821–23, 97 S.Ct. 1491, 1494–95, 52 L.Ed.2d 72 (1977); *Franco v. Kelly,* 854 F.2d 584, 588–89 (2d Cir.1988); *Washington v. James,* 782 F.2d 1134, 1138 (2d Cir. 1986); *Mawhinney v. Henderson,* 542 F.2d 1, 3 (2d Cir.1976).

10. *Morello v. James,* 810 F.2d at 347.

these basic rights when he enters the prison gate.[11] The intentional obstruction of a prisoner's access to the courts is precisely the sort of oppression that the Fourteenth Amendment and § 1983 are intended to remedy.[12]

It will be for you to determine whether plaintiff prepared a brief or had one prepared by inmate law clerks, and whether the defendants, or any one of them who you must consider separately, intentionally deprived plaintiff of it (I will define the word intentionally in a few moments). If you so find, however, you must proceed to consider whether the loss of his legal materials denied him meaningful access to the courts.[13] In this connection, you may consider that the legal proceeding relevant to plaintiff's claimed loss was an appeal of his conviction to the Appellate Division of New York State Supreme Court. You may also consider that the Appellate Division allowed plaintiff an opportunity to file a *pro se* brief to detail claims that his appointed lawyer refused or failed to include on the main brief, and that appointed lawyer was

relieved. You may also consider that a defendant has a constitutional right to represent himself in a criminal proceeding, and that indeed, if you so find, plaintiff had a prepared a *pro se* brief.[14] On the other hand, you may not consider in connection with this element of plaintiff's claim whether any of plaintiff's *pro se* arguments had legal merit or would have been successful. The determination whether plaintiff's right of access was infringed only requires you to consider whether plaintiff was deprived of his opportunity to have his claims heard by the Appellate Division, not whether his claims ultimately had merit and not whether, for example, his conviction would have been reversed, his sentence modified, or he would have been set free.[15]

Now I have spoken of the requirement that plaintiff prove an "intentional" obstruction of his right of access to the courts. What do I mean by "intentional?" An act is done intentionally if done voluntarily, purposely, and not because of mistake or accident, negligence or other innocent reason. Intent is the state of mind with which a person acts or fails to act

---

**11.** *Procunier v. Martinez,* 416 U.S. 396, 422–23, 94 S.Ct. 1800, 1815–16, 40 L.Ed.2d 224 (1974) (Marshall, J., concurring) (quoted in *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1028–29 (2d Cir. 1985)).

**12.** *Franco v. Kelly,* 854 F.2d at 589; *Morello v. James,* 810 F.2d at 347.

**13.** *Morello v. James,* 810 F.2d at 347 ("whether the deprivation of Morello's work product ultimately violated his right of access to the courts under the circumstances of this case is a factual question yet to be resolved."); *Washington v. James,* 782 F.2d at 1139 (it is only where plaintiff alleges "continuing activity rather than a single isolated instance," that he need not make a showing that his "right of access to the courts was chilled or the legal representation he received was impaired.")

**14.** *Hossman v. Spradlin,* 812 F.2d 1019, 1022 & n. 3 (7th Cir.1987) ("Each of the cases cited by appellant in support of the contention that destruction or loss of a prisoner's legal papers by prison officials states a valid cause of action under § 1983 deals with a situation involving papers or documents crucial or essential to a pending or contemplated appeal.") (collecting cases).

**15.** A "direct and continuous limitation on access to legal materials" carries an inherent allegation

of prejudice. *DeMallory v. Cullen,* 855 F.2d 442, 448 (7th Cir.1988). Plaintiffs allegation of complete and therefore continuous deprivation of his *pro se* brief brings his case within this category. Indeed, "we have required a showing of prejudice only where minor or indirect limitations on access to courts are alleged." *Id.* 855 F.2d at 448. Even when the latter cases, "the necessary showing of prejudice is a minimal one[,] ... requir[ing] only that the plaintiff 'articulate, to some degree, the basis for his claim that his access to the courts was significantly ... impaired.'" *Id.* 855 F.2d at 448 (quoting *Hossman v. Spradlin,* 812 F.2d at 1022, discussed in fn. 10, *supra* ). *See also, Chandler v. Baird,* 926 F.2d 1057, 1062–63 (11th Cir.1991) (articulating the same distinction and observing, in cases such as this one, that '"the prejudice inheres in the specific facts"); *Gregory v. Nunn,* 895 F.2d 413, 414–15 (7th Cir.1990) (per curiam) ("even if the items were not 'irreplaceable' it would take time to replace those items ... [and] [a] delay or interruption in pending or contemplated litigation may indicate a deprivation of constitutional dimensions"). In a very recent case, the First Circuit articulated the distinction somewhat differently: "Where a prisoner, ..., does not allege an absolute deprivation of access to all his legal materials, but rather complains about some sort of conditional restriction of access to some of them, we think it fair to require him to show an 'actual injury' as a prerequisite to recovery." *Sowell v. Vose,* 941

with a purpose or aim that a particular result occur, in this case an intent to obstruct access to the courts. A failure to act may also be intentional.

An intention in the sense of purpose or aim that a particular result occur is not necessary, however—that is, plaintiff need not prove that a particular defendant had in mind a purpose or aim that plaintiff's access to the courts be obstructed, although of course that will be enough to establish liability. An individual defendant may also be held liable if he acted recklessly or with deliberate indifference to plaintiff's right of access even if he did not expressly want plaintiff's access to the courts obstructed.[16] A person acts recklessly or with deliberate indifference when his conduct reflects complete indifference to a known risk of infringing plaintiff's access to the courts and when the defendant who you are considering does not care whether access is unimpeded or obstructed, despite that defendant's knowledge that there is a significant risk of obstruction. Total unconcern coupled with known serious risks.[17] A person acts recklessly or with this deliberate indifference if he acts with such indifference with respect to the claimed obstruction of access to the courts as is tantamount to a knowing willingness that it occur.[18] A failure to act may also be of this reckless or deliberately indifferent character. But the act or failure to act

must occur with actual knowledge of the impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from the defendant's failure to prevent it.[19]

Your verdict should apply this standard to all the facts and circumstances adduced at trial, together with reasonable inferences to be drawn thereupon.

### A. Supervisory Liability

If you find that the conduct of any of the corrections officials denied plaintiff his constitutional right of meaningful court access, you must then consider whether Superintendents James and Smith were personally involved in that conduct. With respect to defendants James and Smith, you must determine whether they are liable to the plaintiff for the acts of other corrections officials under the following standard. Although personal involvement is necessary to a finding of liability, direct participation of a Corrections Facility superintendent in the alleged constitutional deprivations is not always necessary. A supervisory official may be personally liable if he acts in one of two possible ways. First he may be liable if you find that, after learning of the violation through a report or appeal, he manifested reckless or deliberate indifference to plaintiff's rights by failing to remedy the wrong. Second, a supervisory official may be liable because

---

F.2d 32 (1st Cir.1991). In this case plaintiff alleges no conditional restriction to his brief but an absolute deprivation. The analysis of these cases is fully consistent with the approach in *Washington v. James*, 782 F.2d at 1139, and *Griffin v. Coughlin*, 743 F.Supp. 1006, 1021–22 (N.D.N.Y. 1990).

**16.** [Supporting authority reproduced, with editing, in the text of the decision above]

**17.** *McGill v. Duckworth*, 944 F.2d 344, 347 (7th Cir.1991).

**18.** *Stubbs v. Dudley*, 849 F.2d 83, 87 (2d Cir. 1988), *cert. denied*, 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989) (quoting *Whitley v. Albers*, 106 S.Ct. at 1085). *See also, Archie v. City of Racine*, 847 F.2d 1211, 1219 (7th Cir.1988) (en banc) (civil standard of recklessness not applied—criminal standard adhered to) (quoted in *Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991)). *Id.* 847 F.2d at 1219–20 ("gross negligence does not violate the Due Process Clause

... [because it] blends into negligence; there is an indistinct and unusually invisible line ... [which] cannot be policed[,] is not a line worth drawing in constitutional law [,] ... [and involves a] distinction ... [which] does not respond to the functions of the Due Process Clause.")

**19.** *Duckworth v. Franzen*, 780 F.2d at 653 (quoted in *McGill v. Duckworth*, 944 F.2d at 348. *See also, Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir.1991) (applying *Franzen* in a due process case). See *McGill, supra*, 944 F.2d at 347 ("ordinarily negligence and even gross negligence in the tort sense [i.e., objective sense] are not enough"); *id.* 944 F.2d at 349 ("*Wilson [v. Seiter]* resolved the conflict between the objective and subjective understandings of recklessness in favor of *Franzen*'s subjective standard."); *id.* 944 F.2d at 348 (*Archie v. City of Racine*, 847 F.2d at 1218–20 "extended ... [*Franzen*'s] approach to cognate questions under the due process clauses").

he knowingly tolerated a policy or custom under which unconstitutional practices occurred, or knowingly allowed such a policy or custom to continue. However, defendants James and Smith may not be found liable simply because they were in a high position of authority and were the supervisors of the other corrections officials.[20] In connection with the second possible alternative basis for supervisory liability I just mentioned (i.e., tolerating a policy or custom), you must bear in mind the following principles. You must consider that the provision of an after the fact remedy for most types of property deprivations is considered under our law to be sufficient recompense to an inmate such that deprivations of most kinds of property at the hands of correctional officials do not ordinarily violate the due process clause of our constitution unless those officials also deprive the inmate of his after the fact remedy. Depriving an inmate of his legal brief and thereby interfering with his access to the courts, of course, stands on different footing; the constitutional violation is complete at the moment of deprivation regardless of any after the fact remedy. Because of the two rules, if these supervisors knowingly tolerated deprivations of ordinary personal property at the hands of correctional officials, and this is for you to determine whether that occurred, the provision by the State of a Court of Claims remedy would

mean that those supervisors did not thereby have a custom or policy tolerating repeated violations of an inmate's constitutional rights.[21] But a supervisor also may be held liable for acquiescing with recklessness or deliberate indifference in a prior pattern of conduct, or a policy or custom, which he knows or constructively knows carries a substantial risk of the kind of harm alleged here—i.e., loss of a legal brief and resulting obstruction of an inmate's access to the courts. In other words, even though the claimed deprivations of ordinary property belonging to these other inmates would not violate those inmate's constitutional rights, because they had a post-deprivation remedy in the New York Court of Claims, if you find that a particular supervisory defendant knew or constructively knew that a pattern or practice under which ordinary property deprivations were allowed to continue without corrective action created a substantial risk that an inmate would be deprived of important legal materials obstructing his right of access to the courts, and that supervisory official recklessly or deliberately failed to act to remedy the situation, you may find that supervisory defendant liable.[22] You should recall my instructions on the concept of intent deliberate indifference and recklessness and apply them here.

By constructive notice I mean that a reasonably competent Superintendent had

**20.** *See Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 122–123 (2d Cir.1991); *Fiacco v. City of Rensselaer,* 783 F.2d 319, 328 (2d Cir.1986).

*Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1065, 1066 (2d Cir.1989); *Meriwether v. Coughlin,* 879 F.2d 1037, 1048 (2d Cir.1989); *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986); *McCann v. Coughlin,* 698 F.2d 112, 125 (2d Cir.1983) all speak of supervisory liability established by "grossly negligent" or "deliberately indifferent" conduct. In light of *Wilson v. Seiter,* discussed above, and *City of Canton, Ohio v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 1204–05, 1206, 103 L.Ed.2d 412 (1989), and indeed the rejection of gross negligence for correction officer liability described above, it would be anomalous to charge a lesser standard for a supervisor. *Barbera v. Smith,* 836 F.2d 96,

99 (2d Cir.1987) required a showing of "reckless" management of subordinates, and *Al–Jundi* resolved the case according to the deliberate indifference standard notwithstanding its simple reference to the earlier cases mentioning "gross negligence." *See also, Bass v. Jackson,* 790 F.2d at 263 (allegations of supervisory liability must be "sufficient to implicate them in his claim of deliberate indifference"); *Owens v. Haas,* 601 F.2d 1242, 1247 (2d Cir.1979) ("the failure to … supervise law enforcement officers must be so grossly negligent *as to constitute 'deliberate indifference'* ").

**21.** *Love v. Coughlin,* 714 F.2d 207 (2d Cir.1983).

**22.** *Al–Jundi v. Estate of Rockefeller,* 885 F.2d 1060, 1066 (2d Cir.1989) (quoting *Haynesworth v. Miller,* 820 F.2d 1245, 1261 (D.C.Cir.1987)

knowledge of facts with respect to which he was recklessly and deliberately indifferent, such that his failure to have actual knowledge can be described as a conscious, culpable refusal to recognize the true facts, inferrible from defendant's failure to actually learn these facts.[23]

## THIRD ELEMENT

## PROXIMATE CAUSE

The third element which plaintiff must prove is that the defendant's acts were a proximate cause of the injuries sustained by the plaintiff. Proximate cause means that there must be a sufficient casual connection between the act or omission of a defendant and any injury or damage sustained by the plaintiff. An act or omission is a proximate cause if it was a substantial factor in bringing about or actually causing injury, that is, if the injury or damage was a reasonably foreseeable consequence of the defendant's act or omission. If any injury was a direct result or a reasonably probable consequence of a defendant's act or omission, it was proximately caused by such act or omission. In other words, if a defendant's act or omission had such an effect in producing the injury that reasonable persons would regard it as being a cause of the injury, then the act or omission is a proximate cause.

In order to recover damages for any injury, the plaintiff must show by a preponderance of the evidence that such injury would not have occurred without the conduct of the particular defendant who you are considering.

A proximate cause need not always be the nearest cause either in time or in space.

In addition, there may be more than one proximate cause of an injury or damage. Many factors or the conduct of two or more people may operate at the same time, either independently or together, to cause an injury.

A defendant is not liable if plaintiff's injury was caused by a new or independent source of an injury which intervenes between the defendant's act or omission and the plaintiff's injury and which produces a result which was not reasonably foreseeable by the particular defendant which you are considering.

If you find that plaintiff has proven by a preponderance of the evidence all three elements of his claim with respect to a particular defendant who you are considering separately, you should find that defendant liable. If you find that plaintiff has not proven any one of these elements with respect to the particular defendant you are considering, then you must find that defendant not liable and return a verdict for him. Remember that the case as to each of these individual defendants must be considered separately by you. The fact that you find that one of the defendants is or is not liable does not determine your verdict as to any other one of these defendants.

("[w]hen inaction in the face of a substantial threat of harm is shown, it can be said that the supervisor acquiesced in the resulting constitutional violation, thereby 'linking' the non-feasance with the injury")).

**23.** The customary charge on constructive notice is simply "objective" with respect to the exist-

ence of such notice. Given *Daniel's* rejection of negligence as a basis for § 1983 liability and the interpretation of *Wilson v. Seiter* set forth above, there must be a subjective component for the knowledge requirement. *Duckworth v. Franzen, supra.*