Stephen **HENDRICKS**, Plaintiff-Appellant,

v.

Thomas A. **COUGHLIN**, III, Ronald Haddad, Walter R. Kelly, Hans Walker, Donald Acquard, Thomas Dudek and William Stranahan, Defendants-Appellees.

No. 607, Docket 89–2099.

United States Court of Appeals, Second Circuit.

Argued Jan. 17, 1991.

Decided Aug. 7, 1991.

Gary Stein, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, New York City, of counsel), for plaintiff-appellant.

John W. McConnell, Asst. Atty. Gen. of the State of N.Y., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of N.Y., Peter H. Schiff, Deputy Sol. Gen., Nancy A. Spiegel, Asst. Atty. Gen., Albany, N.Y., of counsel), for defendants-appellees.

Before OAKES, Chief Judge, and CARDAMONE and WALKER, Circuit Judges.

CARDAMONE, Circuit Judge:

The principal issue on this appeal is whether a jury charge adequately described the standard of liability prison officials are held to in an inmate's action claiming they failed to protect him from another inmate's violent actions. We recognize that prisons are reputedly full of suppressed violence, shouldering prison administrators with the most difficult task of maintaining order and discipline over the entire prison population. Yet, inmates who are in the public's custody have a right under the Eighth Amendment to be preserved from the infliction of "cruel and unusual punishments" that might befall them in those confined surroundings.

Stephen Hendricks appeals from a judgment of the United States District Court for the Western District of New York, Edmund F. Maxwell, *Magistrate*, entered March 2, 1989 following a jury trial that resulted in a verdict in favor of defendants Walter R. Kelly, Superintendent of Attica Correctional Facility, and Hans Walker, Deputy Superintendent of Security at Attica. Hendricks as plaintiff brought a 42

U.S.C. § 1983 action alleging defendants violated his Eighth Amendment rights by inadequately protecting him against threats from and an assault by another inmate while he was incarcerated at Attica.

Appellant contends the magistrate improperly instructed the jury regarding the standard of liability applicable to his claim. Defendants assert the magistrate erred when he refused to grant their motion for a directed verdict and, further, that Hendricks' objections to the jury instructions may not be raised for the first time on appeal. Because we believe the magistrate correctly submitted the case to the jury but gave, over Hendricks' objection, incomplete instructions on his § 1983 claim, we reverse and remand for a new trial.

## BACKGROUND

On September 27, 1985 Hendricks was transferred from Collins Correctional Facility, a medium security facility, to Attica Correctional Facility, a maximum security facility, as punishment for encouraging a protest against institutional policies at Collins. Shortly after his arrival at Attica, Hendricks learned that one Terrence Ball was also there. In 1982 Hendricks had given a statement to the Utica, New York, police implicating Ball in the kidnapping and murder of a child. Ball was later convicted of a crime related to that vicious wrongdoing. Ball recognized Hendricks and threatened him during his first few days at Attica.

After three days at Attica, Hendricks was transferred to its Special Housing Unit (SHU) as part of his punishment for his behavior at Collins. While in SHU he was intimidated by other inmates—apparently because of his statement implicating Ball—and sought protection from prison officials saying he was concerned about his safety. Over the course of the next few months—while still housed at SHU—appellant met with prison officials on two occasions to discuss his fear that release into the general prison population would endanger him. During this period he also contacted Prisoners' Legal Services and it, in turn, further alerted prison officials to the problem and requested steps be taken to ensure Hendricks' safety. On February 2, 1986 appellant was released from SHU into the general population at Attica.

Because the threats by Ball and other inmates continued, Hendricks and Legal Services again requested action be taken to protect him, and he had another meeting with a prison official. Subsequently, Attica officials decided that as a safety measure appellant should be transferred to another correctional facility, but the transfer application was rejected by the Department of Corrections Bureau of Classification and Movement.

On March 25, 1986 someone allegedly threw hot water through the window of the door to Hendricks' cell, burning his legs. The assailant, whom appellant could not identify, said: "if you run and tell, it will get hotter." Hendricks did not report this attack to prison officials or seek medical attention until a week later when a prison nurse treated him with ointment for "healed-over burn sites." Hendricks was thereafter placed in protective custody and suffered no further attacks or injuries while at Attica.

Appellant subsequently commenced the instant § 1983 action alleging that defendants Superintendent Kelly, Deputy Superintendent Walker, Thomas Coughlin, III, Commissioner of the New York State Department of Corrections, and Ronald Haddad, New York State Department of Corrections Classification Analyst, violated his Eighth Amendment rights by failing adequately to protect him from violence by other inmates. This action was joined with a second Eighth Amendment claim based on a different and separate incident, in which Hendricks claimed that other individuals used excessive force on him. Appellant agreed to a voluntary dismissal of his cause of action against defendant Coughlin before trial, and against defendant Haddad at the close of the evidence.

After the close of appellant's direct case, defendants moved for a directed verdict on his failure-to-protect cause of action asserting that evidence of causation linking their conduct with his injury was lacking, inasmuch as there was insufficient proof that Hendricks' injury was caused or orchestrated by Ball. The magistrate reserved deci-

sion on defendants' motion, and stated his intention to submit the case to the jury; he ultimately did so, and the jury found for the defendants. The district court entered judgment in favor of defendants on the jury verdict. On appeal, Hendricks challenges the jury's verdict only insofar as it ruled adversely on his action against defendants Kelly and Walker.

## DISCUSSION

### A. *Failure to Grant Defendants' Motion for a Directed Verdict*

We treat as an initial matter defendants' assertion that the magistrate erred in refusing to grant their motion for directed verdict. In deciding whether a motion for a directed verdict under Fed.R.Civ.P. 50 has been appropriately made, we use the same standards as would a trial court. *See Sarus v. Rotundo*, 831 F.2d 397, 400 (2d Cir.1987). Giving the non-moving party the benefit of all reasonable inferences—and viewing the evidence in a light most favorable to that party—a directed verdict should be entered only when there is such overwhelming evidence to support the moving party's position that fair and reasonable people could not arrive at a verdict against him. *See Best Brands Beverage v. Falstaff Brewing Corp.*, 842 F.2d 578, 585 (2d Cir.1987); *Diebold v. Moore McCormack Bulk Transp. Lines, Inc.*, 805 F.2d 55, 57 (2d Cir.1986).

■ Defendants argue that Hendricks did not produce sufficient evidence to tie his alleged assailant to Ball and therefore failed to causally link his injury to appellees' alleged deliberate indifference. The proof is to the contrary. Hendricks produced ample circumstantial evidence connecting Ball to the assault. There was proof that both Ball and other inmates swore retribution against Hendricks for "ratting," as well as some evidence that Ball had thrown hot water on an inmate on another occasion. Additionally, the words spoken by Hendricks' assailant, "if you run and tell, it will get hotter," can be seen as a reference to Hendricks' reputation as a "dime dropper," that is, an informant. Based on these facts, a reasonable juror could have concluded that Ball committed or, at least, somehow orchestrated the assault on Hendricks. Consequently, the magistrate correctly denied defendants' motion for a directed verdict and submitted the case to the jury.

### B. *Standard of Liability*

■ Before analyzing the correctness of the jury instructions with respect to the standards applicable to Hendricks' claim, we think it useful to examine its constitutional basis. The legal foundation of Hendricks' action is that the failure to protect an inmate from the actions of other inmates implicates civil rights protected by the Constitution. When analyzing the Eighth Amendment's protection of prisoners, it must be kept in mind that those in society's custody are entitled to be spared the "unnecessary and wanton infliction of pain" under that constitutional safeguard. *See Gregg v. Georgia*, 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976).

■ The proof of such infliction should be viewed in the context of the conduct that gave rise to the claim; that is to say, is the claim one arising from the deprivation of needed medical assistance against which there is no governmental interest to be weighed; or does the injury come about because of the official use of force to restore order, where institutional concerns compete with those of the prisoner. *See Whitley v. Albers*, 475 U.S. 312, 319–22, 106 S.Ct. 1078, 1084–86, 89 L.Ed.2d 251 (1986). For example, the test in use-of-force to restore order cases is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm," *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.) (Friendly, J.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973) (cited with approval in *Whitley v. Albers*, 475 U.S. at 320–21, 106 S.Ct. at 1085), while the deliberate indifference test is applied in cases alleging prison officials' failure to attend to an inmate's medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976). Recently, the Supreme Court ruled that the deliberate indifference standard is also appropriate in cases alleging inhumane conditions of confinement. *Wilson v. Seiter*, —— U.S.

——, ——, 111 S.Ct. 2321, 2329, 115 L.Ed.2d 271 (1991).

■ Imprisoning a guilty defendant serves a number of penalogical purposes amongst which is administering just punishment. But once incarcerated, protecting the guilty defendant from other inmates' violence ordinarily involves no competing penalogical policies. In fact, taking measures to ensure inmates' safety aids in the maintenance of order in prison. Hence, an inmate's claim that prison officials failed, as a result of their deliberate indifference, to protect him from the violent actions of other inmates may state a viable § 1983 cause of action. *See United States v. Bailey,* 444 U.S. 394, 423, 100 S.Ct. 624, 641, 62 L.Ed.2d 575 (1980) (Blackmun, J., dissenting); *Stubbs v. Dudley,* 849 F.2d 83, 85 (2d Cir.1988), *cert. denied,* 489 U.S. 1034, 109 S.Ct. 1095, 103 L.Ed.2d 230 (1989); *Bass v. Jackson,* 790 F.2d 260, 262–63 (2d Cir. 1986); *Ayers v. Coughlin,* 780 F.2d 205, 209 (2d Cir.1985) (per curiam).

## C. *Magistrate's Instructions*

■ We turn now to Hendricks' contention that the magistrate incorrectly instructed the jury regarding the standard of liability applicable to his claims. Proof of mere negligence will not give rise to a constitutional violation. *Whitley v. Albers,* 475 U.S. at 319, 106 S.Ct. at 1084 ("To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety."). A plaintiff must demonstrate that defendants acted with deliberate indifference with respect to his safety or with an intent to cause harm to him; though a showing of an express intent to inflict unnecessary pain is not required to state a constitutional cause of action. *Whitley,* 475 U.S. at 319, 106 S.Ct. at 1084; *Stubbs,* 849 F.2d at 85. A constitutional violation may be shown by proof of "alternative degrees of intent," *Stubbs,* 849 F.2d at 86, such as recklessness. *See Ayers,* 780 F.2d at 209.

■ The confusion in the magistrate's charge in the instant case arises because Hendricks alleged two separate and un-related causes of action against the defendants: failure to protect him from another inmate's violence and excessive use of force against him. The first springs from the threats made by Ball, which the magistrate said Hendricks asserted resulted from defendants' deliberate indifference towards his constitutional right to be protected. The second cause of action arose from an alleged excessive use of force. The magistrate stated that Hendricks claimed that defendants wantonly and recklessly inflicted pain on him in violation of the Eighth Amendment.

Here the magistrate instructed the jury that appellant was required to show that defendants acted with deliberate indifference for his safety. In explaining this concept it stated

> The plaintiff is not required to show an express intent to inflict unnecessary pain in order to establish a constitutional claim.
>
> . . . .
>
> [N]or is the mere negligence on the part of any Defendant sufficient to give rise to a constitutional violation.

The magistrate went on to tell the jury that "if you find that any of the Defendants … did not act with deliberate or callous indifference or gross negligence with respect to a threat upon Plaintiff's safety, then you should render a verdict in favor of each said Defendant."

Although these instructions actually stated that a showing of intent was not necessary to establish liability and that mere negligence was not enough, the instructions did not explain the "alternative degrees of intent" which constitute wantonness, the required showing for establishing a constitutional violation. Specifically, the magistrate failed to instruct the jury that, if it were to find that the defendants acted with reckless disregard for appellant's constitutional rights, then they should reach a verdict in favor of appellant. *See Ayers,* 780 F.2d at 209.

This omission was exacerbated by the fact that the charge respecting appellant's use of excessive force claim stated that a showing of recklessness was sufficient to support a plaintiff's verdict. The jury instructions thus created the impression that,

unlike the excessive force claim, a finding of recklessness on the failure to protect claim would not support a verdict in favor of appellant. This was error which, because it goes directly to plaintiff's claim, was not harmless. Such error therefore necessitates a new trial. *See United States v. Dove*, 916 F.2d 41, 47 (2d Cir. 1990).

■ Appellees' contention that Hendricks waived his objections to the jury instructions is unavailing. Appellants requested inclusion of the concept of recklessness in the failure to protect portion of the jury charge and took exception to the magistrate's failure to include such an instruction. Thus, appellant's objection was properly preserved. *See* Fed.R.Civ.P. 51.

### CONCLUSION

For the reasons stated, the judgment of the district court is reversed and the case is remanded for a new trial.