**Rolando CORONADO, Plaintiff,**

v.

**Eugene S. LEFEVRE, Superintendent, Clinton Correctional Facility; Thomas A. Coughlin, Commissioner, Defendants.**

**Civ. No. 89–CV–885.**

United States District Court,
N.D. New York.

May 11, 1995.

Rolando Coronado, Auburn, NY, pro se.

Dennis C. Vacco, Atty. Gen. for State of N.Y., David Fruchter, Asst. Atty. Gen., Dept. of Law, Albany, NY, for defendants.

## ORDER

SCULLIN, District Judge:

This matter is before the court on the pro se plaintiff's application for appointment of counsel, made following notice that the action was being placed on a trial-ready list. The underlying complaint, brought pursuant to 42 U.S.C. § 1983, alleges violations of the plaintiff's Eighth and Fourteenth Amendment rights which occurred during his incarceration at the Clinton Correctional Facility. For the reasons set forth below, the court denies the plaintiff's application.

## BACKGROUND

The complaint refers to two separate incidents. In the first, on July 18, 1988, corrections officers at the Clinton Correctional Facility observed the plaintiff fighting with another prisoner.[1] Both prisoners used "homemade shanks," though only the one used by the plaintiff was recovered. The plaintiff suffered several laceration and puncture wounds to his back, as well as abrasions and scratches on his shoulder, arms, and face. Unusual Incident Reports, Defendants' Response, Ex. A.

In the second incident, on September 8, 1988, corrections officers found the plaintiff in his cell with two lacerations on his face: one six or seven inches long, the other four inches long and deep. No weapons were found, and the plaintiff "would not make any statements." Defendant LeFevre, then Superintendent of the facility, was notified approximately fifteen minutes after the incident occurred. Unusual Incident Report, Defendants' Response, Exhibit A.[2]

It is the plaintiff's contention that corrections officers at the Clinton Correctional Facility were "negligent in not being cautious about frisking prisoners for weapons," and this negligence resulted in his injuries. Compl. at 2. The corrections officers are not defendants, however. Rather, the plaintiff named as defendants Eugene LeFevre, the former Superintendent of the Clinton Correctional Facility, and Thomas Coughlin, the Commissioner of the New York State Department of Corrections. The plaintiff apparently seeks to hold these officials liable based upon their allegedly negligent supervision of the security precautions taken by the officers. He seeks injunctive relief and compensatory damages in the amount of $500,000.

## DISCUSSION

 The plaintiff is requesting appointment of counsel for the fourth time.[3] The court has authority to appoint counsel for indigent plaintiffs in civil cases pursuant to 28 U.S.C. § 1915(d), which provides, "[t]he court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious."[4] Appoint-

---

1. In the reports concerning this incident, the other inmate is named as the perpetrator of the assault, and the plaintiff is identified as the victim. In an interview, the other inmate claimed that somebody attacked *him*. Both the plaintiff and the other inmate stated that they did not know who initiated the attack or why. Unusual Incident Reports, Defendants' Response to Request for Production of Documents ("Defendants' Response"), Ex. A.

2. Attached to the complaint are reports of two other incidents:

 On October 1, 1986, at the Elmira Correctional Facility, the plaintiff was found "suffering from several punture [sic] & slash wounds bleeding profusely." He told the corrections officer who interviewed him that he had fallen down the stairs. The medical staff, however, determined that the injuries could not possibly have occurred from a fall, but were caused by sharp instruments. Three shanks were recovered in the cell block where the plaintiff had been found. Following a hearing, the plaintiff was placed in protective custody. Because the plaintiff would not provide information regarding his assailant(s), the hearing officer concluded that he was still in danger and might plan retaliation against his attackers.

 On August 16, 1988, the plaintiff was again involved in an altercation with another inmate.

 The accident report is extremely difficult to read, but the plaintiff apparently sustained only minor injuries. He refused treatment and made no statement.

3. Magistrate Judge Scanlon first denied plaintiff's application on October 24, 1989, and directed the plaintiff to try to obtain counsel on his own. On December 5, 1989 and May 30, 1992, the Magistrate Judge assumed for purposes of the application that the complaint had merit, but denied the applications because they were "premature."

 In addition, on May 21, 1993, this court approved the Magistrate Judge's Report–Recommendation and denied a motion to dismiss the action made by defendant LeFevre. The motion was based solely on defendant LeFevre's contention that the statute of limitations had run and plaintiff had failed to timely serve the complaint upon him.

4. Although sua sponte dismissal of the complaint is appropriate in some situations, the court finds that it would not be appropriate here. *See Nance v. Kelly*, 912 F.2d 605, 607 (2d Cir.1990) ("dismissal on the basis of factual deficiencies in the complaint must wait until the defendant attacks the lack of such details on a Rule 12(b)(6) motion"); *Daniel v. Henderson*, 155 F.R.D. 30, 31 (N.D.N.Y.1994) (McAvoy, C.J.) (refusing to dis-

ment of counsel in civil actions is at the discretion of the court. *Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir.1994). The Second Circuit has outlined the requirements for the consideration of such motions. *Hodge v. Police Officers*, 802 F.2d 58, 61–62 (2d Cir. 1986).

Initially, the *Hodge* court explained, "the language of the statute itself requires that the indigent be unable to obtain counsel before appointment will even be considered." 802 F.2d at 61. Once it has been determined that the plaintiff has been unable to obtain counsel, the court must decide whether the plaintiff has a substantial claim or is likely to succeed on the merits. If so, the court must consider additional, enumerated factors. *Burgos*, 14 F.3d at 789 (citing *Hodge*, 802 F.2d at 61–62). Because the court finds that the plaintiff herein is unlikely to succeed on the merits, the other factors need not be addressed.

### A. Inability to Obtain Counsel

The Second Circuit has stated that, although it is within the district court's discretion to decide whether an indigent is unable to obtain counsel, "the court may take notice of the fact that most indigent incarcerated prisoners do not in fact have the resources, knowledge and experience needed to find counsel willing to represent them without charge." *McDonald v. Head Criminal Court Supervisor Officer*, 850 F.2d 121, 124 (2d Cir.1988). "[T]he court may [also] ... require the pro se to specify what efforts he has made in an attempt to obtain counsel himself." *Id.*

■ In this case, the plaintiff is an indigent prisoner serving a life sentence. Furthermore, the plaintiff has documented his unsuccessful attempts to obtain counsel. Letter from Plaintiff to Court of 11/8/89 (Docket # 11). The plaintiff contacted the Prisoners' Legal Services of New York and the Clinton County Bar Association, and both

declined to take his case. Therefore, the court finds that the plaintiff has sufficiently demonstrated his inability to obtain counsel.

### B. Merit of Claim

■ Courts have treated the merit of the indigent's claim as the primary factor in determining whether to appoint counsel, because "every assignment of a volunteer lawyer to an undeserving client deprives society of a volunteer lawyer available for a deserving cause." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 172 (2d Cir.1989). A plaintiff is considered to have a substantial claim if he "appears to have some chance of success." *Hodge*, 802 F.2d at 60–61. Even if a claim is not frivolous, it is not substantial if the chances of succeeding on the merits are "highly dubious." *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir.1961), *cert. denied* 370 U.S. 964, 82 S.Ct. 1592, 8 L.Ed.2d 830 (1962).[5]

■ When evaluating the merits of the case, it is important that courts keep in mind that "[p]ro se complaints ... are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Bass v. Jackson*, 790 F.2d 260, 262 (2d Cir.1986) (quoting *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972) (per curiam)). Failure to provide an inmate with adequate security may be the basis for a § 1983 action under the Eighth and Fourteenth Amendments for cruel and unusual punishment and denial of liberty without due process, respectively. *Stubbs v. Dudley*, 849 F.2d 83, 85 (2d Cir.1988). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, —— U.S. ——, ——, 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994). The Supreme Court has developed separate approaches for claims under the Eighth and Fourteenth Amendments.

---

miss the complaint sua sponte "guarantees that the plaintiff will have notice of and the opportunity to correct inadequacies in his complaint in order to avoid dismissal").

**5.** Furthermore, in *Jenkins v. Chemical Bank*, the Second Circuit held, "[w]e do not believe an attorney need be appointed in every case which survives a motion to dismiss." *Jenkins*, 721 F.2d 876, 880 (1983) (quoted in *Hodge*, 802 F.2d at 60).

## 1. *Eighth Amendment*

■ In *Farmer*, the Supreme Court explained that a prison official violates the Eighth Amendment only when two requirements are satisfied. "First, the deprivation [of rights] alleged must be, objectively, 'sufficiently serious.'" *Farmer*, —— U.S. at ——, 114 S.Ct. at 1977 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991)). Second, there must be an "unnecessary and wanton infliction of pain." In a prison context, this requirement is defined as "deliberate indifference" to an inmate's health or safety. *Wilson*, 501 U.S. at 297, 111 S.Ct. at 2323.

### a. *Sufficiently Serious*

The Supreme Court did not determine in *Farmer* the point at which a risk of inmate assault becomes substantial enough to be considered a deprivation of a prisoner's Eighth Amendment rights. *Farmer*, —— U.S. at —— n. 3, 114 S.Ct. at 1977 n. 3. The Court did state that, "[f]or a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.*

In the present case, the plaintiff suffered five stab wounds in the first attack, and in the second attack he suffered "a 4 [inch] deep laceration to [the] right side of [his] face and a 6–7 [inch] laceration from [the] left scalp of [his] forehead to [and] through his left ear." Defendants' Response, Ex. B. He also submitted reports of two other incidents in which he was injured. See note 2. Thus there is some evidence of a substantial risk of serious harm to this plaintiff.

### b. *Deliberate Indifference*

■ For a prison official to be held liable under the Eighth Amendment, he must have acted with deliberate indifference to an inmate's health or safety. "Deliberate indifference" requires a showing that "the official [was] both aware of facts from which the inference could be drawn that a substantial

risk of serious harm exist[ed], and he must also [have] draw[n] the inference". *Farmer*, —— U.S. at ——, 114 S.Ct. at 1979. The Supreme Court explained that one way an inmate may prove deliberate indifference is by "present[ing] evidence showing that a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past....'" *Id.* at ——, 1981 (citations omitted).

In this case, the plaintiff alleges that prisoners "are harmed by the negligence of officials incharged [sic] of the security or the safety of prisoners," and that his injuries were "caused by the negligence of officials." Compl. at 2. The plaintiff did not allege either that the prison officials knew of the attacks on the plaintiff, allegedly caused by inadequate safety precautions, or that prison officials knew of facts that would have led them to believe that a substantial risk of inmate attacks existed within the prison. The mere allegation of negligence is insufficient, and without evidence of such deliberate indifference on the part of the prison officials, the plaintiff may not prevail on his Eighth Amendment claim.

## 2. *Fourteenth Amendment*

■ Unlike Eighth Amendment claims, which require a showing of deliberate indifference, the Supreme Court has not established a specific standard for the level of culpability required in Fourteenth Amendment cases. However, the Court has held that "the Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property." *Daniels v. Williams*, 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986) [6]; *see also Davidson v. Cannon*, 474 U.S. 344, 348, 106 S.Ct. 668, 670, 88 L.Ed.2d 677 (1986) (prison officials did not violate prisoner's due process rights where the prisoner alleged only that the officials "negligently failed to protect him from another inmate"); *Bryant v. Maffucci*,

---

**6.** The Court did not "consider whether something less than intentional conduct, such as recklessness or 'gross negligence,' is enough to trigger the protections of the Due Process Clause"

because the petitioner conceded that the respondent was at most negligent. *Daniels*, 474 U.S. at 334 n. 3, 106 S.Ct. at 666 n. 3.

923 F.2d 979, 984 (2d Cir.) ("simple negligence is not enough"), *cert. denied,* 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991).

Read very liberally, the complaint herein may allege that the named prison officials negligently oversaw the "frisking" of prisoners conducted by corrections officers. However, the plaintiff alleges no facts which support a claim that actions of the prison officials rose above the level of negligence. Therefore, the plaintiff is unlikely to succeed on his Fourteenth Amendment Due Process claim.

### 3. *Section 1983 and Personal Involvement*

It is well settled that the personal involvement of a defendant is a prerequisite for the assessment of damages in a § 1983 action, *McKinnon v. Patterson,* 568 F.2d 930, 934 (2d Cir.1977), *cert. denied,* 434 U.S. 1087, 98 S.Ct. 1282, 55 L.Ed.2d 792 (1978), and that the doctrine of respondeat superior is inapplicable to § 1983 claims. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.), *cert. denied,* 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973).

In *Williams v. Smith,* 781 F.2d 319 (1986), the Second Circuit detailed the various ways in which a defendant can be personally involved in a constitutional deprivation. A supervisory official is said to have been personally involved if he or she: directly participated in the infraction; failed to remedy a wrong after learning of it through a report or appeal; created a policy or custom under which unconstitutional practices occurred or allowed such a policy or custom to continue; or, was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams,* 781 F.2d at 323–24.

In this case, the plaintiff does not allege that the defendant prison officials were personally involved in the attacks by the other inmates. Although then-Superintendent LeFevre was notified soon after the September 1988 assault, there is no indication that he or defendant Coughlin had any knowledge of the alleged unsafe conditions at the prison before these incidents. Further, the plaintiff does not allege that the prison officials created or allowed a policy or custom under which unconstitutional actions occurred. The plaintiff claims that the guards at the prison "were negligent in not being cautious about frisking prisoners," and asks the court to "set forth a program that exercises more survelliance [sic] in the correctional Department, so that not so many individuals are harmed by the negligence of officials incharged [sic] of the security or safety of prisoners." There is, however, no allegation that the purportedly negligent frisking of prisoners was related to any policy or custom put in place by the defendants. And, though it may be possible to liberally read the plaintiff's complaint as asserting a claim that the prison officials failed to adequately supervise or watch the prison guards frisk prisoners,[7] it does not appear that the defendants' management of prison employees rose to the level of gross negligence. It therefore appears that the plaintiff will have great difficulty satisfying § 1983's personal involvement requirement.

### CONCLUSION

For all of the above reasons, the plaintiff's chances of succeeding in this action are "highly dubious," and the court therefore denies his application for appointment of counsel.[8] It is hereby

---

**7.** *But cf. Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987) (finding prisoner's allegation that superintendent of prison was responsible for the "conduct of all staff personnel, and the care, custody and safety of all inmates" insufficient to support requirement of personal involvement by the superintendent in the conduct of his subordinates).

**8.** The court notes that, in deciding whether a case has merit, it "may rely in part on an evaluation by a member of the bar that the claim has no merit." *Pena v. Choo,* 826 F.2d 168, 169 (2d Cir.1987). Here, an attorney from Prisoners' Legal Services (PLS) of New York declined to take the plaintiff's case, in a letter dated December 5, 1988, and explained the difficulty the plaintiff would have proving the State's liability. However, the PLS attorney added the caveat, "this does not mean that you have no chance of winning." The PLS attorney further suggested that the plaintiff file a case in the Court of Claims as "there is certainly some possibility that the

ORDERED, that the plaintiff's application for appointment of counsel is DENIED, and it is further

ORDERED, that the Clerk of the Court serve a copy of this order upon the parties in this action together with a form for consent to proceed to trial before the U.S. Magistrate Judge.

IT IS SO ORDERED.

judge would rule in your favor." Enclosure to Plaintiff's Letter of 11/9/89 (Docket # 11).

It appears that the main reason PLS refused to take the plaintiff's case was the plaintiff's inability to name his assailant. The plaintiff has since obtained, through discovery, the Unusual Incident Reports which give the name of the assailant in the July 1988 incident, and may wish to make another attempt to obtain counsel on his own.