**Deborah MATTHEWS, for Frederick Matthews, Plaintiff,**

v.

**David B. ARMITAGE, Sergeant; Daniel Senkowski, Superintendent; and William Costello, Deputy Superintendent, in their individual capacities, Defendants.**

No. 93–CV–1166 (DRH).

United States District Court, N.D. New York

Jan. 25, 1999.

Prisoners Legal Services of New York, New York City (Michael E. Cassidy, of counsel), for plaintiff.

Hon. Eliot Spitzer, Attorney General, State of New York, Department of Law, Albany, New York (James B.McGowan, of counsel), for defendants.

## MEMORANDUM–DECISION AND ORDER[1]

HOMER, United States Magistrate Judge.

On August 19, 1998, a jury returned a verdict in the above captioned case awarding nominal damages of one dollar against defendants Daniel Senkowski ("Senkowski") and William Costello ("Costello"). Presently pending are motions by the defendants pursuant to Fed.R.Civ.P. 59(e) and 60(a) to amend the judgment and pursuant to Fed. R.Civ.P. 50(b) for judgment as a matter of law. Docket No. 65. For the reasons which follow, both motions are granted.

### I. Background

Clinton Correctional Facility ("Clinton") is a maximum security prison located in Dannemora, Clinton County and operated by the New York Department of Correctional Services ("DOCS"). N.Y.Comp.Codes R. & Regs., tit. 7 ("NYCCRR"), § 100.15 (1998).[2] Clinton houses approximately 2,800 inmates. On August 20, 1991, these inmates included Frederick Matthews ("Matthews") and Aaron Breaziel ("Breaziel"). On that date Breaziel was being held in the involuntary protective custody ("IPC") area of Cell Block E after he had been attacked by another inmate with a razor while in the general population.[3] Matthews was placed in the IPC unit on August 20 after he too was attacked by an inmate with a razor in general population. Both Breaziel and Matthews were placed in involuntary rather than voluntary protective custody after each refused to cooperate in identifying his assailant.

On August 21, 1991, as Matthews was moving his personal property into cell E–410, Corrections Officer Durgan opened the doors of cell E–415 for Breaziel and the cell of

---

1. This matter has been referred to the undersigned for all proceedings, including entry of judgment, upon the consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Docket No. 54.

2. DOCS designates its facilities at three levels of security: minimum, medium and maximum. N.Y.Comp.Codes R. & Regs., tit. 9, § 7601.1(g)–(*l*) (1998).

3. Inmates are admitted to IPC housing for protection from other inmates when they are unwilling to accept protective custody voluntarily. NYCCRR, § 330.2(b). An inmate confined in IPC is entitled to a hearing on his confinement in accordance with NYCCRR § 254.

another inmate to permit them to exit for exercise. In the few seconds following, Breaziel stabbed Matthews while out of sight of the corrections officer, the only corrections officer on duty in the IPC unit. Matthews survived this attack but died in custody of unrelated causes in July 1994. This action was continued by his widow. At the conclusion of the trial, the jury returned a verdict awarding one dollar for plaintiff against Senkowski and Costello. The jury found no liability against defendant David B. Armitage. The pending motions followed.

## II. Motion to Amend the Judgment

The judgment entered by the Clerk of the Court erroneously indicated that Armitage had been held liable along with Senkowski and Costello. Docket No. 64. Plaintiff does not oppose Armitage's motion to correct the judgment. Pl.'s Mem. of Law (Docket No. 71), p. 1. The motion to correct the judgment is granted.

## III. Motion for Judgment as a Matter of Law

### A. Legal Standard

Under Fed.R.Civ.P. 50(b), the district court may direct the entry of a judgment as a matter of law following a jury verdict that is not supported by legally sufficient evidence. *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 142 (2d Cir.1998). Judgment as a matter of law should be entered when "(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against [it]." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers*, 34 F.3d 1148, 1154 (2d Cir.1994) (cita-

tions omitted); *Mendoza v. City of Rome, N.Y.*, 872 F.Supp. 1110, 1114–15 (N.D.N.Y. 1994) (Hurd, M.J.).

The movant's burden on a post-verdict Rule 50 motion is a high one. *Concerned Area Residents for the Env't v. Southview Farm*, 34 F.3d 114, 117 (2d Cir.1994). In considering the motion, a court must view the evidence in the light most favorable to the non-movant, giving the non-movant the benefit of all reasonable inferences the jury may have drawn from the evidence. *Jones v. Spentonbush–Red Star Co.*, 155 F.3d 587, 591 (2d Cir.1998). A court may not re-weigh the evidence or assess the credibility of witnesses. *Id.*[4]

### B. Eighth Amendment Claim

The Eighth Amendment places a burden on prison officials to "take reasonable measures to guarantee the safety of ... inmates." *Hudson v. Palmer*, 468 U.S. 517, 526–27, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). That burden includes an obligation to protect prisoners from violence at the hands of other prisoners. *Farmer v. Brennan*, 511 U.S. 825, 833, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Hendricks v. Coughlin*, 942 F.2d 109, 113 (2d Cir.1991). Not every injury suffered by one inmate at the hands of another imposes constitutional liability, however. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970. A prisoner asserting an Eighth Amendment claim must establish both that the deprivation alleged is sufficiently serious and that the defendant acted with a sufficiently culpable state of mind. *Wilson v. Seiter*, 501 U.S. 294, 298, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991).

In the context of a failure to protect claim, the deprivation is sufficiently seri-

---

4. The defendants never moved before trial for summary judgment pursuant to Fed.R.Civ.P. 56. During trial, the defendants moved for judgment as a matter of law pursuant to Fed.R.Civ.P. 50(a) at the conclusion of the plaintiff's direct case and again prior to submission of the case to the jury. In ruling on those motions, the undersigned noted the Second Circuit's

> prior observation that even if the trial judge [believes the motion should be granted] at the close of the evidence, the prudent course of

action is to submit the case to the jury and to grant judgment as a matter of law, if necessary, after the verdict has been returned, so that if the court of appeals eventually determines that judgment should not have been granted as a matter of law, the need for a second trial will be avoided....

*Galdieri–Ambrosini v. National Realty & Dev. Corp.*, 136 F.3d 276, 282 (2d Cir.1998) (citing cases).

ous if the inmate is incarcerated under conditions imposing a substantial risk of serious harm. *Farmer*, 511 U.S. at 834, 114 S.Ct. 1970.[5] The state of mind requirement in this context is one of deliberate indifference to the inmate's health and safety. *Wilson*, 501 U.S. at 302–03, 111 S.Ct. 2321. Under the *Farmer* formulation of deliberate indifference, prison officials are liable for a failure to protect inmates only when they "know[ ] of and disregard[ ] an excessive risk to inmate health and safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970.

Direct evidence that prison officials knew of and disregarded a serious risk of harm to a prison inmate will rarely be available. *Coppage v. Mann*, 906 F.Supp. 1025, 1036 (E.D.Va.1995). Deliberate indifference may be established by circumstantial evidence. *Spruce v. Sargent*, 149 F.3d 783, 786 (8th Cir.1998). Nor must a prisoner demonstrate that he lodged a specific complaint that he was at risk of attack from a certain inmate. *Farmer*, 511 U.S. at 848, 114 S.Ct. 1970 ("failure to give advance notice is not dispositive"). "[T]he issue is not whether [a plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [him]." *Hayes v. New York City Dep't of Corrections*, 84 F.3d 614, 621 (2d Cir.1996).

Here, defendants contend that the record is devoid of any evidence from which they should have inferred that Breaziel posed a substantial risk to Matthews on August 21, 1991. *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970. Plaintiff concedes that prior to the assault on August 21, 1991, neither Matthews nor either defendant knew or could have known that Breaziel posed a threat specific to Matthews. Pl.'s Mem. of Law (Docket No. 71), p. 4 ("the parties all agree that the defendants likewise could not have known, prior to this assault, that Mr. Breaziel posed a particular threat to Mr. Matthews.").

Plaintiff contends, however, that as known to the defendants, Breaziel's general propensity for violence made Breaziel a threat to the safety of any inmate, including Matthews, who happened in Breaziel's way.

The Supreme Court noted in *Farmer* that a plaintiff could demonstrate deliberate indifference by evidence that "a substantial risk of inmate attacks was 'longstanding, pervasive, well-documented, or expressly noted by prison officials in the past....'" 511 U.S. at 842, 114 S.Ct. 1970; *Street v. Corrections Corp. of Am.*, 102 F.3d 810, 815 (6th Cir.1996); *Coronado v. LeFevre*, 886 F.Supp. 220, 224 (N.D.N.Y.1995). Such evidence does not require proof of a "specific risk." *Street*, 102 F.3d at 815. It does require proof, however, that whatever the source of the risk, the particular plaintiff entered within the zone of that risk as known to the defendants. *See Street*, 102 F.3d at 816 (defendants aware that inmate with propensity for violence had ongoing dispute with plaintiff); *Candelaria v. Coughlin*, No. 93 Civ. 3212(RWS), 1997 WL 171256, at *10 (S.D.N.Y. Apr.10, 1997) (complaints to defendant prison official "were too general to have put [defendant] on notice of any particular risk of assault on [plaintiff]...."); *Murchison v. Keane*, No. 94 CIV. 466(CSH), 1996 WL 363086, at *7 (S.D.N.Y. July 1, 1996) (claim stated where plaintiff alleged that defendants aware he was repeatedly robbed and once assaulted by unknown inmates); *Coronado*, 886 F.Supp. at 224 (plaintiff's claim insufficient although alleging four assaults by unknown inmates within two years).

Plaintiff's proof fails here in two respects. First, even viewing the evidence in the light most favorable to plaintiff, there was no evidence that Senkowski or Costello knew that Matthews was within the zone of risk posed by Breaziel on August 21, 1991. The risk existed by virtue of Breaziel's propensity for violence. Matthews and Breaziel had coexisted in each other's presence in the general prison population at least fifty times without incident prior to August 21, 1991. On that date, Breaziel himself was under

---

5. *Farmer* itself did not consider the question of when an inmate assault becomes "sufficiently substantial for Eighth Amendment purposes."

*Farmer*, 511 U.S. at 834 n. 3, 114 S.Ct. 1970. Defendants here do not contest the sufficiency of the evidence on this element.

protection as the victim of a stabbing. No basis existed on that date for Senkowski or Costello to conclude that Matthews was at substantial risk from Breaziel.

Second, the operations of IPC block on August 21, 1991 refute plaintiff's claim. On that date, each inmate in IPC, including Matthews, was assigned to his own cell. Each cell permitted its occupant to close an open cell door behind him if the inmate perceived a need for protection from other inmates in the vicinity. There had never previously been a stabbing in the Clinton IPC block. Additional precautions might have prevented the stabbing here, but the failure to institute such precautions at most constituted negligence. There is no evidence that on August 21, 1991, Senkowski or Costello had any reason to believe that Matthews was at substantial risk of attack by Breaziel in the IPC block.

Accordingly, plaintiff failed to offer any evidence from which a reasonable and fair minded jury could find that either defendant acted with deliberate indifference. Defendants' motion must be granted on that ground.

## C. Qualified Immunity

Defendants also seek judgment as a matter of law on the ground of qualified immunity. They contend that qualified immunity is appropriate here because (1) reasonable persons would find that housing Breaziel and Matthews on the same cell block was entirely reasonable, and (2) the attack occurred pre-*Farmer* when clearly established law held defendants liable for a failure to protect only under higher standards than established in *Farmer*.

 Qualified immunity shields state actors from liability for civil damages provided that their conduct when committed did not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 812, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Ayers v. Ryan*, 152 F.3d 77, 82 (2d Cir.1998). The contours of the right must be established to the extent that a reasonable official would recognize his acts violated that right. *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Williams v. Greifinger*, 97 F.3d 699, 703 (2d Cir.1996).

 "In determining whether a right was clearly established at the time defendants acted, [courts] examine whether the right was defined with reasonable specificity; whether decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir.1995). A public official is entitled to qualified immunity when, at the time the officer was acting, the right in question was not clearly established or, even if the right was established, it was not objectively reasonable for the official to have known that his or her conduct violated the right. *Connell v. Signoracci*, 153 F.3d 74, 80 (2d Cir.1998).

The conduct of these defendants must be judged against established law as of August 21, 1991. *Walentas v. Lipper*, 862 F.2d 414, 423 (2d Cir.1988). The right at issue is the right to be protected from attacks by other inmates, a right clearly established in 1991. *Hendricks*, 942 F.2d at 113. The exact contours of that right, however, were not made clear until the 1994 decision in *Farmer*. Especially significant for this case is the degree of knowledge required of prison officials before liability may be imposed. This question was not resolved before *Farmer*. See *Farmer*, 511 U.S. at 835–38, 114 S.Ct. 1970.

Prior to *Farmer* the majority of cases addressing the issue imposed a higher standard of liability than ultimately imposed by the Supreme Court.[6] See *Gibbs v. Franklin*, 49 F.3d 1206, 1207 (7th Cir.1995) (liability required that prison officials intended for prisoner to be hurt); *Ruefly v. Landon*, 825 F.2d 792, 794 (4th Cir.1987) (liability only when prison officials had knowledge of a "specific known risk of harm" to the particu-

---

**6.** The proper standard was well recognized to be that of deliberate indifference. That term, however, had been inconsistently defined which re-sulted in the grant of certiorari in *Farmer*. *Farmer*, 511 U.S. at 832, 114 S.Ct. 1970.

lar plaintiff). The Second Circuit had not yet definitively addressed the proper standard of liability. This fact as well weighs in favor of finding defendants qualifiedly immune because the law in this circuit was not clearly established at the time they acted. *See Price v. Sasser,* 65 F.3d 342, 346 (4th Cir.1995) (officials acting in 1990 immune from suit where there was no specific knowledge of a particularized risk); *see also Prosser v. Ross,* 70 F.3d 1005, 1007 (8th Cir.1995) ("[P]rison officials are entitled to qualified immunity from claims arising out of a surprise attack by one inmate on another. This is true even if the official knows (as [plaintiff] alleges) that the attacking inmate may be dangerous or violent.").

Therefore, both because the law on August 21, 1991 was unclear as to the level of knowledge required by defendants for liability and because it had not been clearly established as of that date that prison officials could be held liable under the Eighth Amendment based solely on the propensity for violence of the attacking inmate, Senkowski and Costello are entitled to qualified immunity on plaintiff's claim. Defendants' motion is granted on that ground as well.

## IV. Conclusion

For the reasons stated above, it is hereby

**ORDERED** that:

1. Defendants' motion to correct the judgment is **GRANTED,** and the Clerk shall amend the judgment to delete the entry of judgment against defendant Armitage and shall enter judgment in favor of defendant Armitage; and

2. Defendants' motion for judgment as a matter of law is **GRANTED,** and the Clerk shall enter judgment in favor of defendants Senkowski and Costello.

**IT IS SO ORDERED.**